**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JANIS SPENCER MURRAY and
MAC MURRAY,

      Plaintiffs/Counter-Defendants,

     v.                                                                                                No. 09-cv-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. DAVID FLY
AND OTHER EVA EVIDENCE**

THIS MATTER comes before the Court upon Plaintiffs' Motion in Limine to Exclude Testimony of Dr. David Fly and Other EVA Evidence, filed November 12, 2010 **(Doc. 153)**. Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is well-taken part and will be granted in part, but otherwise denied. The Burt Defendants have filed a response in opposition ("Defendants" for purposes of this motion).

**Background**

Plaintiff Janis Spencer Murray is a licensed New Mexico veterinarian and 10% owner of a nationally-acclaimed quarter horse stallion name *Dash Ta Fame*, and with her husband Mac Murray owns and operates MJ Farms in Veguita, Socorro County, New Mexico. This case involves claims over the interests, rights, and responsibilities of the parties in connection with *Dash Ta Fame*, particularly where it concerns ownership of the stallions stored semen as well as

proceeds from sale of the semen. There are currently over 2,020 doses of the stallion's semen being held at different locations, namely Select Breeders Southwest ("SBS"), Smart Ranches, and MJ Farms.[1]  There is a dispute as to whether Plaintiffs own a 10% in kind interest in the frozen semen at each location.

EVA (sometimes referred to as "equine arteritis virus" or "equine viral arteritis), is a contagious viral equine disease which causes horse breeders some concern because it causes mares to experience a higher than normal rate of abortion.  EVA is spread from horse to horse through respiratory secretions and by breeding.  Stallions can spread the disease through their semen, although a stallion that ceases to "shed" EVA in his semen is no longer capable of transmitting the virus in that manner.  EVA-positive semen can still be used to breed mares as long as appropriate measures are followed.[2]

Some of *Dash Ta Fame*'s semen was found to be EVA-positive.  This EVA-positive semen is stored at MJ Farms, and constitutes 233 doses or about 11.5% of all of the stallion's frozen semen.  Plaintiffs believe that the salient facts regarding the EVA outbreak at MJ Farms are undisputed. The outbreak occurred in 2006, during which *Dash Ta Fame* could not leave MJ Farms due to a quarantine imposed by Dr. David Fly, D.V.M., the State Veterinarian.  The quarantine lasted from June 2006 until September 2007.  Not wanting to forego the collection of semen from the stallion during his confinement at MJ Farms,  Plaintiffs froze and stored *Dash Ta Fame*'s semen from November 2006 until April 2007, and Plaintiffs concede that the semen collected during this period is EVA-positive. Some time in April 2007, *Dash Ta Fame* ceased

---

[1]  Plaintiffs explain that for purposes of this motion, eight "straws" of semen equal one dose, and one dose is the amount necessary to inseminate one mare.

[2]  These facts about EVA are supported by Plaintiffs' exhibits.

carrying the EVA virus in his semen and was no longer capable of either spreading EVA to mares through insemination or contracting it again himself.

Parties dispute whether the EVA-positive frozen semen should be used or destroyed. Plaintiffs maintain that EVA-positive frozen semen can be used if appropriate precautions are taken and that it is just as valuable as EVA-negative frozen semen. They claim that they have bred 246 mares with EVA-positive semen in 1997, without mishap.  Defendant Bob Burt insists that the semen should be destroyed.

## Discussion

In this motion, Plaintiffs seek to exclude testimony by Dr. David Fly, D.V.M., and certain evidence related to "EVA" which they contend is irrelevant and would unfairly prejudice them, as well as confuse the issues, mislead the jury, and waste time.  The 2006 EVA outbreak at MJ Farms is currently the subject of a separate state court tort action pending in Bernalillo County District Court.[3]  In that case, Plaintiffs and Defendant Bob Burt have joined forces as co-plaintiffs, bringing suit against a farm neighboring MJ Farms which is allegedly the source of the EVA virus that caused the 2006 MJ Farms outbreak.  Dr. David Fly is expected to testify during the state court trial.

Dr. Fly's interaction with Plaintiffs has an adversarial history. According to Plaintiffs, Dr. Fly accused the Murrays of improperly shipping horses out of state and other misconduct that, in his opinion, warranted an attempt to revoke Dr. Murray's veterinary licence.[4]  Based on

---

[3] The action is captioned as *Mac Murray, et al., v. W.L. Mooring et al.*, D-202-CV-200806490.

[4] Dr. Fly also encouraged the bringing of criminal charges against both Dr. Murray and Mr. Murray in Socorro County.  *See* Ex. D.  The charges were dismissed in full, and the attempt to have Dr. Murray's veterinary license revoked was unsuccessful.

the depositions taken of the Murrays' and Dr. Fly, Plaintiffs expect that Defendant Burt intends to attempt to introduce evidence at trial concerning purported mismanagement of MJ Farms, the licensing board's criminal investigation of Plaintiffs, and the criminal prosecution of Plaintiffs. Plaintiffs understand that Dr. Fly's testimony may be relevant to issues of causation in the state court case, but contend that a large part of his testimony is irrelevant and prejudicial in this federal lawsuit.  Specifically, they contend that Dr. Fly's testimony is relevant as to the disposition of the 233 doses of EVA-positive semen stored at MJ Farms, but that testimony and evidence relating to causation of the EVA outbreak has no place in the instant lawsuit.

     Rule 402 of the Federal Rules of Evidence states that evidence "which is not relevant is not admissible."  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.  Courts may exclude evidence that is relevant when its "probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.

     The Court finds that both parties' positions are extreme.  I disagree with Defendants' position that, in relying in part on Rule 403 to exclude Dr. Fry's testimony, Plaintiffs are admitting that the evidence they seek to exclude is relevant.  The Court reads Plaintiff's argument to exclude Dr. Fry's testimony under both rules.  I also disagree with Defendants' position that the cause for the 2006 EVA outbreak at MJ Farms is relevant to the claims and counterclaims asserted in this case.  The claims and counterclaims in the instant case are grounded in contract.[5]  How the outbreak got started has no bearing on the parties' rights and

---

[5] Even Count VI, which asserts a claim of negligent misrepresentation against Bob Burt, is based on an economic tort.

4

responsibilities toward the EVA-positive frozen semen that was collected during the outbreak.

I agree with Plaintiffs that the claims and counterclaims in this case concern EVA in a very limited fashion, that is, whether the EVA-positive frozen semen held at MJ Farms should be put to use to breed mares or destroyed. However, Plaintiffs' request for exclusion of Dr. Fry's testimony and EVA evidence is overbroad and unwarranted under the federal rules of evidence. Plaintiffs seek to exclude not only evidence and testimony that is related to the causation of the EVA outbreak at MJ Farms, but also evidence that goes beyond the causation issue. Therefore, the Court will tailor the list suggested by Plaintiffs to conform to what the Court finds to be relevant to the claims and counterclaims, and exclude evidence where the probative value is substantially outweighed by the danger of unfair prejudice to Plaintiffs.

*Dr. Fly's Testimony; the 2006 EVA Outbreak; the Quarantine at MJ Farms, and the EVA Management Plan Imposed by Dr. Fly on MJ Farms as a Result of the Outbreak* [6]: Dr. Fly's testimony will not be excluded wholesale. It would be helpful for the fact finder to know about the risks and dangers associated with EVA in order to better determine the parties' respective rights as to the disposition of the EVA-positive frozen semen collected during the quarantine. Dr. Fly should be able to discuss these risks and dangers without delving into either the reason for the outbreak or the collateral criminal investigation and prosecution of Plaintiffs. The fact that the EVA Outbreak occurred, the existence of a subsequent quarantine, and the management plan imposed on MJ Farms are all potentially relevant to the issue of how the EVA-positive frozen semen should be disposed. Further, evidence on these areas may be relevant to Plaintiffs' decision in the first place to collect semen from *Dash Ta Fame* that was EVA-positive. However, testimony as to how the outbreak started is irrelevant to this lawsuit and will not be

---

[6] Plaintiffs present this list of evidence and testimony they wish to exclude on page 8 of the Motion.

5

admitted at trial.

*Evidence and Testimony Regarding Alleged Mismanagement at MJ Farms, the Attempt to Have Dr. Murray's Veterinary License, and the Investigation of Horse Shipments by the Murrays*: Evidence and testimony on these areas is irrelevant to the relatively narrow issues surrounding the EVA-positive frozen semen.  Any relevance such evidence and testimony might have is dwarfed by the danger of unfair prejudice it carries against Plaintiffs.

Plaintiffs also seek to exclude "any other testimony not essential to determining what should happen with the 233 doses of EVA positive frozen semen."  The Court denies Plaintiffs' motion in this category, as the request is overbroad and premature. Plaintiffs may renew their motion as to this category closer to trial, or during trial, but they will need to provide more specificity so that the Court may know exactly what evidence and testimony it is being asked to exclude.

## Conclusion

Plaintiffs have met their burden that some of Dr. Fly's testimony and some EVA-related evidence is not admissible on grounds of relevance or prejudice.  However, Plaintiffs also request the exclusion of testimony and evidence which the Court finds is relevant to the claims and counterclaims asserted in this case, and that its relevance is not substantially outweighed by the danger of unfair prejudice.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion in Limine to Exclude Testimony of Dr. David Fly and Other EVA Evidence **(Doc. 153)** is hereby GRANTED IN PART and DENIED IN PART, as described in this Order.

UNITED STATES DISTRICT JUDGE

6