# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JANIS SPENCER MURRAY and
MAC MURRAY,

      Plaintiffs/Counter-Defendants,

    v.                                            No. 09-cv-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY FINDING ON EXTRINSIC EVIDENCE

THIS MATTER comes before the Court upon Plaintiffs' Motion for Preliminary Finding Under Fed.R.Evid. (104(A) That Extrinsic Evidence Will Be Admissible At Trial in Connection with the 1997 Purchase of 10% of *Dash Ta Fame*, filed November 12, 2010 (**Doc. 158**). Having considered the parties' briefs and the applicable law, I find that Plaintiffs' motion is well-taken in part and is granted in part. The motion is otherwise denied.

## Background

This case arises out of a dispute between the co-owners of the acclaimed quarter horse *Dash Ta Fame*. Plaintiffs seek a preliminary finding that extrinsic evidence will be admissible at trial in connection with the 1997 agreement pursuant to which Janis Spencer Murray[1] purchased 10% ownership in the quarter horse stallion, *Dash Ta Fame*.

---

[1] Dr. Murray is referred to as Janis Spencer where appropriate.

The only contemporaneous document memorializing Dr. Murray's purchase of a 10% ownership in the stallion is a two-page document, hereinafter referred to as the "1997 agreement" (attached as Exhibit A to the motion). According to Plaintiffs, prior to entering into the 1997 agreement, Dr. Murray stood *Dash Ta Fame* at her farm in Utah for four consecutive breeding seasons before she purchased 10% of the stallion. In 1997, she learned that Bob Burt (also referred to as "Defendant" for purposes of this motion) – at that time the 100% owner of *Dash Ta Fame*, was considering selling the horse. Concerned that she would lose the opportunity to continue standing the horse, Dr. Murray started discussions with Defendant Burt which resulted in the sale of a 10% ownership interest. The discussion and sale of the 10% interest was facilitated by a mutual friend, Bob Slingerland.

On June 17, 1997, in Salt Lake City, Utah, Dr. Murray and Mr. Burt reached a partial agreement on a hand-written document which was signed by Bob Burt and which stated: "Received from Janis Spencer $5000 for 10% ownership of Dash Ta Fame" ("June Document").

October 14, 1997, a few months later, Mr. Slingerland prepared a second document which Dr. Murray and Mr. Burt both signed ("October Document"). In that document, Mr. Burt represents that he is the sole owner of *Dash Ta Fame* except for the 10% interest sold to Janis Spencer. Mr. Burt also states that "no other person or entity has any interest whatsoever in said horse" and acknowledges receipt from Janis Spencer of the full purchase price for said ten percent interest."

## Discussion

Under Rule 104 of the Federal Rules of Evidence, preliminary questions concerning the admissibility of evidence are determined by the Court.

**I.      Controlling Substantive Law**

2

Before turning to the merits of admissibility of extrinsic evidence, I must first determine what substantive law will govern issues relating to the Two Part Agreement. Plaintiffs contend that New Mexico's choice of law rules point to Utah law as the operative law for this 1997 agreement. However, Defendants rely on the parties' stipulation in the Joint Status Report and Provisional Discovery Plan ("JSR") to argue that New Mexico law controls. Doc. 47 at 3.

Not much analysis is necessary to resolve the issue. The language of the JSR states that "[t]he parties further stipulate and agree that the law governing this case is: New Mexico." Thus, the "binding stipulation" described by Defendants refers to the law that governs the claims asserted in this lawsuit. It does not necessarily cover all the documents which may become part of the record in this case, particularly an agreement which the parties executed prior to the initiation of this lawsuit. Defendants do not recognize this distinction, but they offer no reason to ignore it. Moreover, even if New Mexico law governs this case, according to the parties' stipulation, New Mexico law would resort to Utah law in interpreting the 1997 agreement.

When deciding diversity cases, federal courts apply the law of the state in which they are sitting including choice of law rules. *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992). New Mexico applies the law of the state where the contract was made. *Pound v. Ins. Co. of N. Am.*, 439 F.2d 1059, 1062 (10th Cir. 1971). While Defendants dispute what substantive law applies to the 1997 agreement, they do not dispute that the contract was executed in Utah. Thus, applying New Mexico choice of law rules, Utah law operates as the controlling law in questions concerning the 1997 agreement.

## II.   Admission of Extrinsic Evidence

Plaintiffs want extrinsic, or parol, evidence admitted for two reasons. First, the 1997 agreement is missing terms that were discussed by the parties at the time the agreement was

entered into, but not included in that document.  The 1997 agreement does not contain terms which describe the consideration paid and received, nor does it expressly cover issues relating to possession and control of *Dash Ta Fame*.  Second, extrinsic evidence would explain ambiguous terms which are contained in the 1997 agreement – particularly the concept of "ownership" in the context of frozen semen.

  Under Utah law, the parol evidence rule prohibits use of extrinsic evidence in an integrated agreement.  *Union Bank v. Swenson*, 707 P.2d 663 (Utah,1985) (parol evidence rule operates in the absence of fraud to exclude contemporaneous conversations, statements, or representations offered for purpose of varying or adding terms of integrated contract).  Thus, a court must first determine whether an agreement is integrated and if so, whether that integration is complete or partial.  *The Cantamar, L.L.C. v. Champagne*, 142 P.3d 140, 147 (Utah App.,2006).  An agreement is integrated where the parties to the agreement "adopt the writing or writings as the final and complete expression of the agreement." *Bennett v. Huish,* 155 P.3d 917, 925 (Utah App.,2007). In order to preserve the integrity of written contracts, courts apply a rebuttable presumption "that a writing which on its face appears to be an integrated agreement is what it appears to be." Id. (quoted case omitted).  However, any relevant evidence – including parol evidence – is admissible in determining whether the writing was intended by the parties to be a complete expression of the agreement, and also to rebut the presumption.  *Id*.

A. <u>Missing Material Terms</u>

  Plaintiffs contend that material terms are missing from the 1997 agreement, specifically, the nature of the consideration supporting the parties' agreement.  A hotly contested issue in this case is whether Bob Burt and Dr. Murray agreed that *Dash Ta Fame* would stay at Dr. Murray's farm, and that in consideration of the purchase, Dr. Murray would continue to be responsible for

breeding mares to the horse as long as she was a co-owner.

Also at issue is whether cash payment for bulk of the purchase price was additional consideration for the standing of the stallion at Dr. Murray's breeding farm. Dr. Murray paid $35,000 of the $40,000 purchase price in cash and claims that Bob Burt promised her in exchange for the cash payment that she could continue to keep *Dash Ta Fame* at the Murray farm. Bob Burt does not dispute that $35,000 was paid in cash, but contends that he did not request cash payment, nor did he make promises regarding standing the stallion at the Murray farm. *See* Ex. B at 36; Ex. E at 151; Ex. F at 15. Where the stallion stands every year is a material term that is not discussed in the 1997 agreement. Because there is a dispute of fact surrounding the nature of the consideration on that issue, the 1997 agreement cannot be considered fully integrated. Thus, parol evidence would be helpful in resolving the issue.

Defendants argue that there are no missing terms in the agreements between the parties because the parties had also entered into yearly breeding contracts from 1994 to 2009 – covering the period prior to the 1997 sales agreement as well as afterward – which concerned breeding, management and veterinarian services for the stallion. These breeding contracts governed the parties' contractual relationship prior to the 1997 agreement; after the 1997 agreement, the breeding contracts controlled subject to the terms in the sales contract. (see, e.g. Ex. C to Doc. 151-3, Ex. D to Doc. 108-4). The Court agrees that Plaintiffs' claim of "missing material terms" in the 1997 agreement is overreaching and largely unfounded, in that the breeding contracts fill in the blanks for much of what might be missing from the 1997 agreement. That being said, none of the breeding contracts addresses the issue of standing the stallion continually at the Murray farm. This material term does seem to be missing from either the 1997 agreement or any of the breeding contracts provided by Defendants for the Court's review.

Accordingly, Plaintiffs have sufficiently rebutted the presumption that the 1997 agreement is fully integrated on this issue, and thus parol evidence will be admitted to resolve this issue.

B.     Ambiguity

The 1997 agreement did not address the parties' respective ownership interest in semen collected from *Dash Ta Fame* which was frozen and stored for later sale. This oversight is understandable, given that freezing semen was not part of the horse industry at the time the 1997 agreement was executed. The June document of the 1997 agreement merely refers to Dr. Murray's purchase of a 10% "ownership," and the October document states only that Dr. Murray was buying 10% from Bob Burt who was the "sole owner."

Parties entered into a subsequent agreement (Ex. G) on July 26, 2004, which addressed the issue of ownership over semen that was collected from the stallion and frozen, stating that division of the frozen semen would be in accordance with the parties' respective interests in the horse. ("July 2004 agreement"). Thus, 90% of the frozen semen is separately kept for Bob Burt and 10% is separately kept for Dr. Murray. Plaintiffs claim, however, that the 1997 agreement and the July 2004 agreement addressing frozen semen together do not definitely resolve the frozen semen ownership issue.

The Court rejects Plaintiff's argument that the 1997 agreement is ambiguous. Ownership of frozen horse semen could not contemplated by either party because freezing any of the horse semen collected was not being done at that time. Thus, those terms were not meant to be included in the agreement. When it became necessary to address that issue, the parties entered into the 2004 agreement in order to cover their rights and responsibilities on that issue. Together with the 2004 agreement, the 1997 agreement covers the frozen semen issue. Where the earlier

agreement does not speak to the ownership of the frozen sperm, certainly the 2004 agreement addresses that very issue.  The 2004 agreement discusses how often semen would be collected from *Dash Ta Fame*, over what period of time collections would be made, where the semen would be stored, and what percentage each party would receive.  Ex. G.  The 1997 agreement is therefore not ambiguous on the issue of frozen sperm ownership; rather, it must be read in connection with the 2004 agreement.  The fact that one needs to consider the 2004 agreement does not mean that extrinsic evidence needs to be admitted, because the 2004 agreement is not itself extrinsic or otherwise inadmissible.

Plaintiffs' request for extrinsic evidence on the ownership issue is an attempt to bypass the 2004 agreement and to open the floodgates to allow in new evidence not contemplated or considered by the parties at the time of the 2004 agreement.  Allowing parol evidence on that issue (or evidence on the parties' course of conduct, as Plaintiffs suggest) would risk the intrusion of evidence which might vary or alter the terms of the agreements already in place, and particularly the parties' rights with regard to the frozen semen.  Based on Defendants' responses to discovery requests, Plaintiffs interpret Defendants' stance on the ownership issue as inconsistent (see Mot. at 10).  Even assuming an inconsistency on Defendants' part from the pleadings, that is not sufficient to find a dispute on the question of ownership of the frozen sperm.  That issue is clearly delineated in the 1997 agreement and the 2004 agreement, and Plaintiffs' motion is denied on that basis.   Should it become evident further into litigation that Defendants do indeed dispute ownership of the stallion's frozen sperm, Plaintiffs may revisit the issue.

## Conclusion

I find and conclude that the 1997 agreement is not fully integrated with regard to the

parties' consideration for the standing of the stallion at the Murray farm.  Thus, parol evidence will be allowed on the issue of whether Dr. Murray was entitled to keep the stallion at her ranch in 2010, 2011 and subsequent years.  However, parol evidence will not be allowed on any other basis because Plaintiffs have not raised any other missing material terms specifically.

I further find and conclude that there is no ambiguity in the 1997 agreement, which must be read together with the 2004 agreement entered into by the parties, on the issue of ownership of the frozen sperm.  The 2004 agreement contains clear, explicit and complete terms on this issue.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Preliminary Finding Under Fed.R.Evid. (104(A) That Extrinsic Evidence Will Be Admissible At Trial in Connection with the 1997 Purchase of 10% of *Dash Ta Fame* (**Doc. 158**) is granted in part and denied in part, as described in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE