IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANIS SPENCER MURRAY and
MAC MURRAY,

      Plaintiffs/Counter-Defendants,

v.                                                                   No. 09-CV-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING BURT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, III, V, VIII AND IX OF PLAINTIFFS' FIRST AMENDED COMPLAINT

THIS MATTER comes before the Court upon Defendant Bob and Darian Burt's Motion for Partial Summary Judgment on Counts I, III, V, VIII and IX of Plaintiffs' First Amended Complaint, filed November 12, 2010 **(Doc. 151)**.  Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

### Background

This case arises out of a dispute between the co-owners of the acclaimed quarter horse *Dash Ta Fame*.  Plaintiff Janis Spencer Murray is a licensed New Mexico veterinarian who, with her husband Mac Murray owns and operates MJ Farms in Veguita, Socorro County, New Mexico.  Defendant Bob Burt owns *Dash Ta Fame*. In 1997, Dr. Murray purchased a 10% ownership interest in the horse.

It is undisputed that Dr. Murray has a 10% interest in the stallion, and that Bob Burt has a

90% interest.  The Murrays and Burts disagree on the nature of Plaintiffs' ownership interest with regard to breeding rights, as well as to *Dash Ta Fame's* frozen semen.  Also at issue is whether Dr. Murray and Bob Burt had an agreement following Dr. Murray's purchase of the 10% interest that the horse would continue to stand at Dr. Murray's farm for subsequent breeding seasons.

Defendants move for dismissal based on summary judgment for Counts I, III, V, VIII and IX.[1]

## Discussion

This entire lawsuit is in essence a dispute over the meaning of contractual agreements entered into by the Murrays and the Burts.  In 1997, the parties executed an agreement consisting of two pages by which Dr. Murray purchased a 10% ownership in *Dash Ta Fame*. The discussion and sale of the 10% interest was facilitated by a mutual friend, Bob Slingerland.

The first part of the agreement was entered into in June, 1997 in Utah. *See* Am. Compl., ¶ 20, and Ex. B to Am. Compl. (Doc. 108-2).  The June 17, 1997 written agreement between Bob Burt and Janis Murray was drafted by Janis Murray (then known as Janis Spencer) in her own handwriting and then signed by Bob Burt.  Ex. A to instant motion (Murray Dep.) at 134-35:13-5.  In October of that same year, Bob Burt and Dr. Murray signed another written agreement. *See* Doc.  108-2.  The October 14, 1997 written agreement between Bob Burt and Janis Murray was drafted and prepared by Mr. Slingerland.  Ex. A at 138-39:21-5; 148-49:1-5; Ex. D (Slingerland Dep); at 17:2-14.

---

[1] Count I: Breach of Contract for Failure to Renew Breeding Season Agreement; Count III: Breach of the Covenant of Good Faith and Fair Dealing; Count V: Promissory Estoppel; Count VIII: Request for Preliminary and Permanent Injunctive Relief for Breach of Contract in Connection with Frozen Semen; Count IX: Declaratory Judgment.

Bob Burt and Janis Murray also entered into annual breeding contracts for *Dash TaFame* each year beginning in the 1994 breeding season and continuing through the 2009 breeding season.  Ex. D to Am. Compl. (Doc. 108-4); and Ex. C to instant motion. Under each of these breeding contracts, Plaintiffs provided breeding and management services for *Dash Ta Fame*, with Dr. Murray specifically providing the veterinary services. Ex. A to instant motion at 159:4-19; 175:2-20; 176:6-11.  These annual breeding contracts for 1994 through 2004 were also drafted and prepared by Mr. Slingerland.[2]

The stated purpose and intent with regard to the parties' initial agreement is zealously disputed. Dr. Murray stated in her deposition that the "only reason" she bought the 10% interest in the stallion was "so he would not go anywhere else." Ex. A at 154:14-16.  She contends that the agreement that to stand *Dash Ta Fame* for the rest of its life was made at the time she first acquired an interest in the horse.  This purported agreement is not written anywhere in the agreements between the parties.

The Burt Defendants maintain that no such oral agreement was made, and that Dr. Murray's 10% interest consists of the right to receive her respective percentage of income derived from (1) the breeding of *Dash Ta Fame*, (2) semen that has been harvested and frozen (which currently is stored in three different locations), and (3) any prizes and awards received by the horse.  Further, Defendants contend that any such oral agreement is not enforceable.

Defendants also point to the annual breeding season contracts as further evidence that the parties contemplated that the stallion could be relocated to another horse farm and that it

---

[2] There appears to be a dispute as to whether Mr. Slingerland was acting as an "agent" for either or both of the parties, but there is no dispute as to Mr. Slingerland's actual role as a participant in the drafting of the agreements.

would not always stand with Dr. Murray at MJ Farms. However, Plaintiffs claim that the initial 1997 agreement overrides any such notion because the agreement to stand the stallion at the Murrays' farm (which they contend was part of the 1997 agreement to begin with) remained in full force and effect throughout subsequent years.

The counts in the Amended Complaint on which Defendants seek summary judgment (Counts I, III, V, VIII and IX) are, as Defendants themselves note, dependent on the existence of an agreement between the parties that *Dash Ta Fame* will stand with Dr. Murray for the remainder of the horse's life. Because there is no written agreement to that effect, this case becomes a matter of contract interpretation, and it cannot be decided on the written documents that are available. The Court has already determined that the 1997 agreement is not fully integrated, and thus that limited parol or extrinsic evidence is necessary in order to determine the parties' intent. *See* Doc. 198 at 5. A finding that the 1997 agreement is fully integrated is crucial to Defendants' instant motion, and on that basis alone, summary judgment is not appropriate.

Under Fed.R.Civ.P. 56, the non-moving party bearing the burden of proof at trial on a dispositive issue must "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment); *see Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000). The "evidentiary" support for this motion consists mostly of depositions in which the parties describe their respective understandings with regard to the various agreements, as well as the written agreements that are of little help in getting to the bottom of the real question – whether there was an agreement between the Burts and Plaintiffs that in exchange for Dr. Murray's purchase of a 10% interest in *Dash Ta Fame*, the stallion would continue to stand at MJ Farms.

This is not the first motion in this case in which the Court has had to deal with issues

touching on the meaning of the agreements entered into by the parties, and evidently it will not the last. What is becoming more and more clear is that a trial will be necessary in order to resolve most of the issues in this lawsuit. Because there are material disputes of fact concerning the purpose of the 1997 agreement, specifically with regard to an agreement to continually stand *Dash Ta Fame* at MJ Farms, Defendants are not entitled to summary judgment.

**THEREFORE,**

**IT IS ORDERED** that Defendant Bob and Darian Burt's Motion for Partial Summary Judgment on Counts I, III, V, VIII and IX of Plaintiffs' First Amended Complaint **(Doc. 151)** is hereby DENIED for reasons described above in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE