## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JANIS SPENCER MURRAY and
MAC MURRAY,

        Plaintiffs/Counter-Defendants,

      v.                                    No. 09-cv-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

        Defendants.


## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BOB BURT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS VI AND VII OF PLAINTIFFS' FIRST AMENDED COMPLAINT

THIS MATTER comes before the Court upon Defendant Bob Burt's Motion for Partial Summary Judgment on Counts VI and VII of Plaintiffs' First Amended Complaint, filed November 12, 2010 (**Doc. 154**). Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken with regard to certain portions of Count VII brought under the New Mexico Unfair Practices claim. The motion is not well-taken and denied as to other parts of Count VII, and also denied with regard to Plaintiffs' negligent misrepresentation claim in Count VI.

### Background[1]

This case arises out of a dispute between the co-owners of the acclaimed quarter horse

_____

[1] Defendants have filed several other dispositive motions on the various counts in the amended complaint. *See* Docs. 151, 156, 160, 161. The basic facts concerning the relationship between Plaintiffs and the Burt Defendants are undisputed.

*Dash Ta Fame*.  Plaintiff Janis Spencer Murray is a licensed New Mexico veterinarian who, with her husband Mac Murray owns and operates MJ Farms in Veguita, Socorro County, New Mexico.  Defendant Bob Burt owns *Dash Ta Fame*. In 1997, Dr. Murray and Bob Burt executed an agreement by which Dr. Murray purchased a 10% ownership interest in the horse. The parties also entered into annual breeding contracts for *Dash Ta Fame* each year beginning in the 1994 breeding season and continuing through the 2009 breeding season. Under each of these breeding contracts, Plaintiffs provided breeding and management services for *Dash Ta Fame*, with Dr. Murray providing the veterinary services.

     *Dash Ta Fame* stood at MJ Farms for every breeding season from 1994 to 2009.  For parts of 2007, 2008 and 2009, Plaintiffs also collected, preserved, froze and stored semen during the non-breeding seasons while the horse was located at MJ Farms.  The stallion spent other parts of the 2008 and 2009 non-breeding seasons at Smart Ranches in Temecula, California. where *Dash Ta Fame*'s semen was again collected, frozen, and stored.  Plaintiffs allege that in late October 2009 (less than two months before the filing of this lawsuit), contrary to the parties' agreement, and without Plaintiffs' consent, Bob Burt informed them that *Dash Ta Fame* would not stand at MJ Farms for the 2010 breeding season or any year thereafter. Am. Compl., Doc. 108, ¶¶ 15, 34-35, 42.

     Most, if not all, of the claims in the amended complaint have some connection to Plaintiffs' overriding contention– which is that Dr. Murray and Bob Burt had an initial agreement as part of Dr. Murray's purchase of a 10% ownership interest in the stallion in which *Dash Ta Fame* would stand at MJ Farms for the remainder of the horse's life.  The position of the Burt Defendants is that no such agreement was made.  In Count VI of the Amended Complaint (Doc. 108) which alleges negligent misrepresentation, Plaintiffs assert that in the

summer of 2009, Bob Burt knew but did not disclose to the Murrays that he did not intend to return *Dash Ta Fame* to the Murrays for the 2010 breeding season; that Mr. Burt had a duty to disclose his alleged intention not to return the stallion to Plaintiffs' farm and that Plaintiffs were damaged as a result of the failure to disclose his intention for the 2010 breeding season.  Count VII asserts a violation of the New Mexico Unfair Practices Act ("UPA"), stating that Mr. Burt knowingly made false or misleading statements to the Murrays, namely, that *Dash Ta Fame* would stand with the Murrays for the rest of its life and that the horse would go to Smart Ranches for the remainder of 2009 but would return to MJ Farms for the 2010 breeding season. In the same count, Plaintiffs also allege that Mr. Burt did not disclose to Smart Ranches that Dr. Murray had a 10% interest in *Dash Ta Fame*, and that he has refused to list Dr. Murray as a co-owner.

Part of the factual background in this case concerns an outbreak of EVA (sometimes referred to as "equine arteritis virus" or "equine viral arteritis") in 2006.  The EVA outbreak resulted in a quarantine during which *Dash Ta Fame* could not leave MJ Farms until September 2007.[2]  The quarantine lasted from June 2006 until September 2007.  Not wanting to forego the collection of semen from the stallion during his confinement at MJ Farms, Plaintiffs froze and stored *Dash Ta Fame*'s semen from November 2006 until April 2007 without the Burts' consent. Some time in April 2007, *Dash Ta Fame* ceased carrying the EVA virus in his semen and was no longer capable of either spreading EVA to mares through insemination or contracting it again himself.  *See* Doc. 191 at 2-3.

---

[2] EVA is a contagious viral equine disease which causes horse breeders some concern because it causes mares to experience a higher than normal rate of abortion.  EVA is spread from horse to horse through respiratory secretions and by breeding.  *See* Doc. 191 at 2.

The 2006 EVA outbreak at MJ Farms is also the subject of a separate state court tort action pending in Bernalillo County District Court: *Mac Murray, et al., v. W.L. Mooring et al.*, D-202-CV-200806490.  In that case, Plaintiffs and Defendant Bob Burt have joined forces as co-plaintiffs, bringing suit against a farm neighboring MJ Farms which is allegedly the source of the EVA virus that caused the 2006 MJ Farms outbreak. The Burts characterize the state court case as a result of the Murrays' collecting and freezing *Dash Ta Fame*'s semen in 2006 while the stallion was quarantined at MJ farms.  Doc. 154, Undisp. Fact No. 21.

In October 2009, Bob Burt wrote a letter to the Murrays in which he requested that they agree to compensate him for any monetary damages he is unable to recover as a plaintiff in that case.  Ex. B at 74-75; Ex. C.  Plaintiffs refused.  Undisp. Facts 20-25.  Bob Burt contends that it was Plaintiffs' refusal to indemnify him which made him decide not to stand the stallion at MJ Farms for the 2010 breeding season, but Plaintiffs claim there were other reasons, such as the continued existence of EVA-positive semen and the fact that Plaintiffs had collected semen "illegally" from *Dash Ta Fame* in 2006 and 2007.  Doc. 185, Resp. to Undisp. Fact No. 25.

### Discussion

Defendant contends that Plaintiffs cannot recover damages or obtain any other relief from Mr. Burt under Counts VI and VII and that he is entitled to summary judgment on those counts.

### I.      Negligent Misrepresentation (Count VI)

In New Mexico, to recover under a claim of negligent misrepresentation, the offending party must have breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the misinformation, and it must have sustained damages. *Ruiz v. Garcia*, 115 N.M. 269, 274-275, 850 P.2d 972, 977 - 978 (N.M.,1993).

In Count VI, Plaintiffs assert that in the summer of 2009, Bob Burt knew but did not disclose to the Murrays that he did not intend to return *Dash Ta Fame* to the Murrays for the 2010 breeding season; that Mr. Burt had a duty to disclose his alleged intention not to return the stallion to Plaintiffs' farm and that Plaintiffs were damaged as a result of the failure to disclose his intention for the 2010 breeding season.  The Burts contend that there is no factual support or evidence of negligent misrepresentation because even if Mr. Burt knew by the summer of 2009 that he was not going to return *Dash Ta Fame* to MJ Farms for the 2010 breeding season, he was under no obligation to tell the Murrays this because there was no agreement for Mr. Burt to stand *Dash Ta Fame* with the Murrays in 2010.

Under a theory of negligent misrepresentation, whether Bob Burt had a duty towards Plaintiffs regarding the standing of *Dash Ta Fame* at MJ Farms hinges on whether there was agreement between the parties to stand the stallion at MJ Farms for the remainder of its life – which is Plaintiffs' contention.  The merits of  Count VI cannot be addressed without a determination regarding that agreement.  The Court has already determined that this issue is one of contract interpretation and will be allowing limited parol evidence to be heard on that issue in order to determine the parties' intent.  *See* Doc. 198 at 5.  Therefore, it is premature to request a ruling on the merits of Plaintiffs' negligent misrepresentation claim, and summary judgment is denied.

## II.    Unfair Practices Act (Count VII)

Count VII asserts a violation of the New Mexico Unfair Practices Act ("UPA"). Plaintiffs allege that Mr. Burt knowingly made false or misleading statements to the Murrays, namely, that *Dash Ta Fame* would stand with the Murrays for the rest of its life and that the horse would go to Smart Ranches for the remainder of 2009 but would return to MJ Farms for

the 2010 breeding season.  In the same count, Plaintiffs also allege that Mr. Burt did not disclose to Smart Ranches that Dr. Murray had a 10% interest in *Dash Ta Fame*, and that he has refused to list Dr. Murray as a co-owner of the horse with the American Quarter Horse Association.

Defendant Burt contends that the Murrays have no standing to bring a UPA claim against Mr. Burt because they are not consumers under the meaning of the UPA.

A.     The Unfair Practices Act

The gravamen of an unfair trade practice is a "misleading, false or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332 (N.M. App. 1998); NMSA § 57-12-2(A).  The UPA defines an unfair or deceptive trade practice as:

> any false or misleading oral or written statement. . . or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce.

§ 57-12-2(D).  A prospective plaintiff in a UPA claim is "[a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act. . . ." N. M. S. A. 1978, § 57-12-10.  The UPA defines "person" as "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates." § 57-12-2(A).

The UPA contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services. *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc*., 137 N.M. 524, 259, 113 P.3d 347, 352 (N.M.App. 2005).  The New Mexico Court of Appeals construed § 57-12-2(D) thus:

> Consistent with its purpose as consumer protection legislation, . . . , the UPA
> gives standing only to buyers of goods or services. *See Channel Cos. v. Britton*,
> 167 N.J. Super. 417, 400 A.2d 1221 (1979) (construing New Jersey Consumer
> Fraud Act and observing that "[t]he legislative concern was the victimized
> consumer, not the occasionally victimized seller").

137 N.M. 530, 113 P.3d at 353; *see also Trademarks Holding LLC v. American Prop. Mgmt.*

*Corp.*, No. 07cv167 BB/WDS, Doc. 168 at 5 (D.N.M. Jan. 17, 2008) (noting that the New

Mexico Court of Appeals made it clear that the UPA applies only to consumer transactions); *TSA*

*Corp. Servs., Inc. v. Hayden Constr., Inc.*, 05cv1115 BB/KBM, Doc. 35 at 8 (D.N.M. Sept. 27,

2006) (noting that the UPA provides protection only to consumers and dismissing counterclaim

where third-party plaintiff was found to be a "seller, rather than a purchaser."); *Friedlander v.*

*Los Alamos Nat'l Bank*, 06cv399 WPJ/LCS, Doc. 46 at 14 (D.N.M. Feb. 2, 2007) (dismissing

UPA claim where there were no allegations that plaintiff ever "sought goods, services or an

extension of credit" from defendant).

B.   <u>Standing</u>

     The UPA provides standing only to a consumer who purchases goods and services from

another, not to the seller of goods or services. The question is whether the Murrays are

considered to be consumers under the UPA.  Plaintiffs must allege and show that Bob Burt sold,

leased, rented or loaned goods or services, or was engaged in trade of commerce as defined in §

57-12-2 of the UPA. *See Saylor v. Valles*, 133 N.M. 432, 437 (Ct.App.2003).

     Plaintiffs base their claim under the UPA on four separate allegations:

(a) Bob Burt told Dr. Murray that she would be able to breed *Dash Ta Fam*e during the breeding
season at her farm for the life of the horse;

(b) Bob Burt told Plaintiffs that *Dash Ta Fame* would go to Smart Ranches for the collection of
frozen semen during the non-breeding season in 2009, only to return to MJ Farms for the 2010
breeding season;

(c) Burt failed to disclose to Smart Ranches that Dr. Murray is a co-owner of *Dash Ta Fame*; and

(d) Notwithstanding the requirements of the American Quarter Horse Association, Burt has failed and refused to list Dr. Murray as a co-owner of *Dash Ta Fame* at any point in time from June 1997, when she first acquired her ownership interest, until the present.
Am. Compl., First Amended Verified Complaint and Demand for a Jury Trial, Doc. 108, at 15–16.

1.      *Allegations (a) and (b) under the Unfair Practices Act:*

First, Defendant argues that the New Mexico UPA does not apply to Dr. Murray's

purchase of the 10% ownership interest  in the stallion because that agreement was transacted in

Utah.  The "trade" or "commerce" relevant to New Mexico UPA claims are those "directly or

indirectly affecting the people of this state." § 57-12-2(C).  Defendant points out that neither Bob

Burt nor the Murrays were residents of New Mexico in 1997, and thus not even the broadest

reading of the UPA would encompass that agreement.   Defendant cites to cases from other

jurisdictions which interpret unfair practices acts or consumer protection acts as applying only to

commercial transactions which occur within the boundaries of that particular state, with certain

exceptions.  *See* Doc. 155 at 11.  While these cases have no precedential value, they are

persuasive, particularly because there appears to be no New Mexico case law to the contrary.

Plaintiffs do not address this particular argument, nor do they dispute Defendant's factual

assertion that in 1997 both parties lived in Utah.[3]  Thus, I find that Plaintiffs have no standing to

---

[3]  *See* Doc. 160 at 2, Undisp. Fact No. 1 and Resp. thereto (reference to Dr. Murray's farm in Utah); Doc. 154 at 2 n.1 (footnote stating that MJ Farms in Veguita, New Mexico was owned and operated by the Murrays since 1999); Doc. 159 at 2 n.2 (Defendants' argument that Utah law applied to 1997 agreement based on fact that Dr. Murray both "lived and worked in Utah" at the time).

This is not to say that there could not be circumstances where out-of-state residency does not necessarily preclude a claim under the UPA, where there is sufficient connection to that state.  In *Nesbitt v. American Community Mutual Ins. Co.*, 236 Mich.App. 215, 228 (Ct.App. 1999), Ohio residents purchased an insurance policy in Ohio from a Michigan-licensed

bring a UPA claim against Bob Burt for allegations (a) and (b) which concern statements or representations made to the Murrays in connection with the purchase of the 10% ownership interest in *Dash Ta Fame*.  This would necessarily include the purchase of the interest, as well as any purported agreements regarding standing the horse at MJ Farms.  I need not decide whether there is any factual support for claims relating to such an agreement sufficient to withstand summary judgment, since Plaintiffs have no standing on this basis in the first place.  However, I note that based on the Court's findings thus far concerning the alleged agreement to stand *Dash Ta Fame* at MJ Farms, Defendant would not have been entitled to summary judgment on whether such an agreement existed.

Plaintiffs attempt to salvage claims (a) and (b) by focusing on the annual contracts which leased *Dash Ta Fame* to MJ Farms for several breeding seasons, instead of the initial 1997 agreement by which the parties allegedly agreed to stand the stallion at MJ Farms for the rest of its life.  Even if the annual agreements were transacted in New Mexico, and even if the 1997 agreement to stand the horse at MJ Farms was meant to continue into subsequent leasing agreements, Plaintiffs cannot substitute those lease agreements for the 1997 agreement made in Utah in order to circumvent the requirements under the UPA.

2.      *Allegations (c) and (d) under the Unfair Practices Act:*

The last two grounds, (c) and (d), asserted under the UPA are not based on misrepresentations made by Bob Burt to the Murrays.  They are based on Bob Burt's failure to

---

company.  The Michigan Court of Appeals broadly applied the Michigan Consumer Protection Act and found that the Act did not necessarily exclude residents of another state where – as in the case at bar – the policy was sold by a Michigan-based company operating from that office, and thus the Ohio purchasers could invoke the protections of the Act.

disclose Dr. Murray's 10% ownership interest to William Swyer at Smart Ranches,[4] and also

Bob Burt's failure to list Dr. Murray as a co-owner of the stallion with the American Quarter

Horse Association ("AQHA").  The fact that the alleged failures to disclose were made to third

parties and not the Murrays does not, in itself, doom these claims.  The UPA does not require

that a misrepresentation be made in the course of a sale between a plaintiff and defendant; it

merely requires that a misrepresentation be "made in connection with the sale. . . . of goods"

generally.  *Lohman v. Daimler-Chrysler Cor*p., 142 N.M. 437, 443, 166 P.3d 1091, 1097

(N.M.App.,2007).  Here, the alleged failure to disclose was in connection with Bob Burt's

transaction with Smart Ranches for the 2010 breeding season, but the injury alleged is to the

Murrays.  It is undisputed that, at the time when Bob Burt approached Smart Ranches to enter an

agreement for the 2010 breeding season, both Bob Burt and the Murrays lived in New Mexico.

Because the test under the UPA is whether the alleged unfair practice "directly or indirectly"

affects "the people of this state," Plaintiffs may allege a claim under the UPA even the

misrepresentation was made to Smart Ranch in California.

  The Court notes that the exact nature of the alleged non-disclosure is not clear, and

requires some clarification before this case goes to trial.  Plaintiffs contend that had Bob Burt

told Dr. Swyers at Smart Ranches the truth about the ownership of *Dash Ta Fame*, the horse

would not have stood at Smart Ranches in 2010.   Insofar as the non-disclosure pertains to the

purported agreement to stand the horse at MJ Farms for the remainder of its life, this claim

requires a threshold findings that such an agreement was made between the parties.  However, if

Plaintiffs allege that a disclosure of the fact of Dr. Murray's 10% ownership interest was not

---

[4]   William Swyers is the principal officer of Stallion & Mare Assisted Reproduction,
P.C. ("SMART").  *See* Doc. 161 at 1.

made and that such disclosure would have made a difference in Smart Ranches' decision to stand the horse, that claim does not necessarily hinge on an agreement between the Burts and Murrays to stand the horse forever at MJ Farms and theoretically could proceed under the UPA regardless of any agreement on where the stallion would stand from year to year.

Defendant also contends that the claim based on non-disclosure of Dr. Murray's 10% ownership interest fails factually because of Dr. Murray's status as a lessee in the annual breeding contracts.  The Court finds that these arguments go to the merits of the claim on which there are  material disputes of fact.  Summary judgment is therefore denied with regard to Bob Burt's failure to disclose Dr. Murray's 10% ownership interest in *Dash Ta Fame* to Smart Ranches.

For similar reasons, Defendant is also not entitled to summary judgment on the UPA claim with regard to a failure to list Dr. Murray as co-owner of the horse with the AQHA. AQHA headquarters may be located in Amarillo, Texas, but the misrepresentation is alleged to affect Plaintiffs, who reside in New Mexico, and is alleged to have occurred from 1997 to the present.  Thus, Defendant cannot successfully argue that the UPA claim must be dismissed because the "transaction" (the failure to list Dr. Murray as part-owner) occurred outside of New Mexico.

C.      Evidentiary Support for UPA Claim

Last, Defendants argue that there is no evidence to support the necessary elements of a UPA claim.  New Mexico law requires a plaintiff must prove four elements in order to establish a violation of the UPA: (1) the defendant made a false statement, (2) the defendant made the statement in connection with the "sale. . .  of . . .  services" and knew that the statement was false, (3) the defendant made the statement in the regular course of trade or commerce, and (4)

11

the statement was one which "may, tends to, or does[ ] deceive or mislead any person." *Dellaira v. Farmers Ins. Exchange*, 136 N.M. 552, 558, 102 P.3d 111, 117 (N.M.App., 2004) (citing *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (internal quotation marks and citations omitted).

Plaintiffs offer sufficient material disputes of fact in order to withstand summary judgment.  The Court cannot find as a matter of law that the there was no misrepresentation by Bob Burt to either Mr. Swyer of Smart Ranches, or with regard to listing Dr. Murray with the AQHA as an owner of *Dash Ta Fame*.  Nor can the Court find as a matter of law that the alleged false statements deceived or misled either Smart Farms or the AQHA.  Summary judgment is therefore denied on these claims under the UPA as well.

## Conclusion

In sum, the Court finds and concludes that summary judgment is DENIED with regard to Plaintiffs' claim of negligent representation in Count VI because there are disputes of fact concerning the purported agreement which is at the center of the claim.

The Court also finds and concludes that summary judgment is GRANTED as to Plaintiffs' claims under the UPA in Count VII, based on statements or representations made to the Murrays in connection with the purchase of the 10% ownership interest in *Dash Ta Fame*.  The 1997 agreement which allegedly included an agreement between the parties to stand the stallion at MJ Farms occurred in Utah.  Thus, Plaintiffs have no standing to bring a UPA claim against Bob Burt under New Mexico's Unfair Practices Act.

The Court also finds and concludes that summary judgment is DENIED on claims under the UPA concerning failures to disclose Dr. Murray's ownership of the horse to Smart Ranches and to the AQHA.   However, clarification is necessary as to whether the failure to disclose Dr.

12

Murray's status as an owner to Smart Ranches refers to the disputed agreement to stand *Dash Ta Fame* at MJ Farms (which necessarily requires a finding that this agreement was made in the first place), or whether the disclosure refers only to Dr. Murray's ownership of a 10% interest in the horse.

The Court also finds and concludes that a number of Defendant's arguments go to the merits and to the sufficiency of the evidence on Plaintiffs' UPA claims.  Material disputes of fact exist on the merits of these claims, and summary judgment is denied on that basis.

**THEREFORE,**

**IT IS ORDERED** that Defendant Bob Burt's Motion for Partial Summary Judgment on Counts VI and VII of Plaintiffs' First Amended Complaint (**Doc. 154**) is granted in part and denied in part as follows:

- Summary judgment is DENIED with regard to Plaintiffs' claim of NEGLIGENT REPRESENTATION in **Count VI** for reasons described above in this Memorandum Opinion and Order;

- Summary judgment is GRANTED as to Plaintiffs' claims under the NEW MEXICO UNFAIR PRACTICE ACT in **Count VII** based on statements made by Bob Burt:
  - (a) to Dr. Murray that she would be able to breed *Dash Ta Fam*e during the breeding season at her farm for the life of the horse; and

  - (b) to Plaintiffs that *Dash Ta Fame* would go to Smart Ranches for the collection of frozen semen during the non-breeding season in 2009, only to return to MJ Farms for the 2010 breeding season for reasons described above in this Memorandum Opinion and Order;

- Summary judgment is DENIED on claims in Count VII under the UPA that:

  - (c) Bob Burt failed to disclose to Smart Ranches that Dr. Murray is a co-owner of *Dash Ta Fame*; and

  - (d) Bob Burt has failed and refused to list Dr. Murray as a co-owner of *Dash Ta Fame* at any point in time from June 1997, when she first acquired her ownership interest, until the present, for reasons described above in this Memorandum Opinion and Order;

- Summary judgment is DENIED with regard to both **Count VI and Count VII** with regard to Defendant's argument that there is **insufficient evidence on the merits** for both of these claims, as the Court finds that material disputes of fact exist on the merits of both of these claims.


_____
UNITED STATES DISTRICT JUDGE