IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANIS SPENCER MURRAY
and MAC MURRAY,

      Plaintiffs,

vs.                                                                   No.  09-cv-1150 WJ/RHS

BOB BURT, DARIAN BURT,
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO AMEND**

THIS MATTER comes before the Court on Bob Burt's Motion and Memorandum in Support of Motion to Amend His Counterclaim (Doc. 143). A hearing was held on this motion on January 12, 2011. Defendant Bob Burt seeks to amend his original counterclaim filed on February 5, 2010 (Doc. 25), based on what he contends are discrepancies in the breeding records received from Plaintiffs during discovery. Having considered the parties' written and oral arguments and the applicable law, the Court finds that Defendant's motion is not well taken and shall be denied.

This litigation over the parties' actions with respect to the co-ownership of a nationally acclaimed quarter horse stallion, *Dash Ta Fame*, began when Plaintiffs filed their complaint on December 7, 2009 (Doc. 1). Defendant Bob Burt ("Defendant") filed his answer and counterclaim on February 5, 2010 (Doc. 25). Within the deadlines set by the Joint Status Report and Provisional Discovery Plan ("JSR") (Doc. 47), Plaintiffs sought leave to amend the

complaint on April 28, 2010 (Doc. 63). The Court granted in part Plaintiffs' motion to amend on July 15, 2010 (Doc. 98), allowing them to assert four new causes of action, and Plaintiffs filed their amended complaint on July 29, 2010 (Doc. 108). On August 12, 2010, Defendant filed an answer to the amended complaint, along with his amended counterclaim (Doc. 110), which included four new counts. Plaintiffs moved to strike the amended counterclaim on the basis that it was filed without the Court's leave (Doc. 113). The Court granted the motion and struck the counterclaim (Doc. 127). Defendant has now filed a motion seeking leave of the Court to amend his counterclaim.

The original counterclaim set forth four causes of action. *See* Defendant Bob Burt's Counterclaim ¶¶ 18-34 (Doc. 25). The counterclaim dealt with frozen semen collected without Defendant's permission at Plaintiffs' farm beginning in 2006, and with the equine viral arteritis disease which *Dash Ta Fame* contracted at Plaintiffs' farm in 2006. *Id.* ¶¶ 6-17. The amended counterclaim would involve allegations that Plaintiffs have derived income in the form of deposits and breeding fees from *Dash Ta Fame* without accounting for the same to Defendant since 1994, and three new causes of action based on these allegations. *See* Defendant Bob Burt's Amended Counterclaim ¶¶ 18, 30-40, 42, 45-49 (Doc. 110).

Defendant argues that because the counterclaim as amended could not have been asserted on the basis of information known to Defendant at the time he filed the original counterclaim, he is entitled to assert these new claims against Plaintiffs based on information obtained after discovery. Plaintiffs object to this request as untimely and argue that Defendant's "new" information was available to him at or before the inception of this lawsuit. They argue that they would be prejudiced if the request were granted, because additional discovery would be required on Defendant's amended counterclaim and the trial date would necessarily be delayed. In his

reply, Defendant argues that, notwithstanding documents provided to him when this lawsuit was filed, nothing happened to make him think Plaintiffs were withholding his share of the money until this summer.

The parties dispute the timeliness of this motion based on whether it met the deadline set in the JSR, and whether it met the deadline set in this Court's previous order (Doc. 127). Whether the motion is timely is not relevant to whether the counterclaim is timely. The proper focus on timeliness centers around one question: when did Defendant know, or when should he have known, that he had a claim for an accounting against Plaintiffs? Defendant answers the question by saying he only knew at the end of this summer, which would make his amendment timely. Plaintiffs say he should have known before this lawsuit was even filed, which would make it untimely. The Court finds that Defendant Burt could have investigated his records and Plaintiffs' documents at the beginning of this year instead of waiting until after discovery was finished.

"Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984). "It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (citations omitted). Defendant's explanation for the delay in asserting the proposed counterclaim focuses on two things that happened this summer which he argues raised a red flag as to whether Plaintiffs had been withholding his share of deposits and breeding fees received in connection with *Dash Ta Fame*.

First, Defendant received a redacted document from Plaintiffs on May 14 during discovery. This document was a breeding report for 2009 ("2009 BR") which listed all the mares who had been bred with *Dash Ta Fame* that year. The redactions deleted all the pertinent information and left a blank table with headings, rendering the document useless. Plaintiffs did not produce an unredacted version until mid-June. This incident prompted Defendant to believe Plaintiffs were hiding something from him. Second, Defendant received a telephone call in early June 2010 from Shannon Kerr, a mare owner who had bred her mare with semen from *Dash Ta Fame*. The mare died before a foal was born, and Ms. Kerr was requesting credit for the fees she had paid, to be applied toward a future *Dash Ta Fame* breed. Since Defendant had not received any money from Plaintiffs in connection with Ms. Kerr's mare, he suspected that Plaintiffs had withheld his share of the breeding fee. This gave Defendant reason to go back and look at documents prepared by Plaintiffs in light of this new information from Ms. Kerr.

The investigation Defendant then undertook apparently revealed discrepancies between the fees he received from Plaintiffs and the breeding reports concerning *Dash Ta Fame* from the years 2006 to 2009. Defendant notes that these breeding reports do not match up with a ledger provided to him by Plaintiffs during discovery which pertains to the semen harvested from *Dash Ta Fame* at Plaintiffs' farm from 2006 to 2009, and contends that before this ledger was produced during discovery, he could not have known about the claim for an accounting.   The main problem with Defendant's motion is that the 2009 BR which apparently set off alarm bells was, in fact, provided to him at the end of the 2009 year. Pls.' Ex. A, Decl. of Janis Spencer Murray ¶ 8 (Doc. 163-1 at 2). Defendant does not dispute receipt of this document in his reply.[1]

---

[1] Given the evidence in Plaintiffs' motion, it would have been difficult to dispute. Plaintiffs point out that Defendant himself provided a copy of the unredacted 2009 BR in his

That Defendant received other documents during discovery which he contends support this claim (such as the 2006-2009 ledger discussed above) does not change the fact that the 2009 BR in which Defendant sees discrepancies supported a claim for accounting against Plaintiffs as early as December 2009. Supporting documentation for this claim received during discovery may have furnished Defendant with additional evidence, but if he had undertaken a review of the 2009 BR when he first received it, he would not have needed the ledger to draft a counterclaim for an accounting since 1994 based on the evidence in the 2009 BR.

Defendant argues that he forgot about the fact that he had the 2009 BR until it was submitted to him in redacted form during discovery. To put this oversight in context, he points out that Plaintiffs also probably forgot that he had it, given that they redacted it before producing it. The Court does not find that Defendant intentionally misrepresented anything to the Court in his motion, but does find that this issue is relevant to determining whether Defendant *should* have known that he had a claim for an accounting against Plaintiffs as early as the end of 2009.

Even if it is true that the Kerr phone call and the redacted document raised concerns for Defendant, it is simply not true that Defendant could not have conducted his review of the 2009 BR before that time. The filing of a lawsuit should also raise a red flag that there are unresolved issues between a defendant and a plaintiff suing him. If Defendant had these breeding reports at the end of every year, he could have done his own review of the reports and the fees he received, and at that point he would have known he had a claim for an accounting, and would have been

---

initial disclosures, and Plaintiffs enclose that copy of the 2009 BR with Bates numbering as Exhibit C to their motion. However, the Court notes that the Exhibit C version of the 2009 BR is missing the third page of the report, but the Bates numbering continues sequentially from BB0195 on page two to BB0196 on page four. On this third page is the record for one of the mares that Defendant's motion focuses on, *La Cassia*. Neither party seems to notice that this page is missing, and the Court will not consider arguments the parties do not raise.

able to timely assert the claim.

Lastly, the Court finds that Defendant Burt should have been aware of the possible basis for his proposed counterclaims due to the fact that as of 2005,[2] Mr. Burt was the only person to sign the breeder's certificates, and thus was in a position of control to know whether the breeding fee was owed. Breeder's certificates are only available for foals sired by *Dash Ta Fame*. They are significant because mare owners cannot be expected to pay $6500 without also requesting a breeder's certificate from Mr. Burt. The whole point of breeding with *Dash Ta Fame* is to register the foal with the American Quarter Horse Association ("AQHA") as progeny of *Dash Ta Fame* upon receipt of a breeder's certificate. Neither Dr. Murray nor the mare owners have any incentive to conceal successfully bred foals from Mr. Burt. Thus, any discrepancy or suggestion of discrepancy should have been evident to Burt from the end-of-year breeding reports and from these requests for breeder's certificates, all of which were available to Defendant long before he filed the instant motion to amend.

The Court also finds that granting the motion would not only prejudice Plaintiffs, but also compromise judicial efficiency. Both parties declared at the January 12 hearing that they did not wish to vacate the current trial setting for March 14, 2011. Allowing Defendant to amend his counterclaim, however, would necessitate allowing Plaintiffs to test the sufficiency of his claims by summary judgment motion or a motion to dismiss. Extending the deadline for dispositive motions in this case would result in prejudice to both parties while preparing for trial, and would burden the Court and its staff already dealing with an extensive round of dispositive motions in this case, as well as struggling with a busy docket in general.

---

[2] At the January 12 hearing, counsel conceded that none of Defendant's evidence referred to in his motion goes back prior to 2005.

Additionally, at the January 12, 2011 hearing the Court reserved the issue of whether the proposed amendment would be futile. Upon review of counsels' argument and the pleadings, the Court now finds that allowing Defendant to amend would be futile. By affidavit, Defendant highlights many of the discrepancies he believes he has uncovered with respect to breeding fees. Def.'s Ex. 3, Affidavit of Darian Burt (Doc. 143-3). For each of these "discrepancies," Plaintiffs have a response: either they never collected a breeding fee in the first place for various reasons, the fee was refunded, or it was applied towards a second breeding with the same mare for no extra charge. Pls.' Ex. A, Decl. of Janis Spencer Murray (Doc. 163-1). Basically, Plaintiffs contend that they did not receive any money from these mare owners out of which to give Defendant his share. The burden is on Defendant to show that some evidence supports his claim—that is, to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the January 12, 2011 hearing, Defense counsel conceded that his only evidence would be testimony from his client and possibly from Dr. Murray. Relying on such evidence alone is nothing more than an attempt to use an absence of evidence to prove its existence—an evidentiary form of trying to prove the negative. The Court is not convinced that Defendant has shown that his proposed amendment would not be futile.

**THEREFORE, IT IS ORDERED THAT** Bob Burt's Motion to Amend His Counterclaim (Doc. 143) is DENIED based on untimeliness, prejudice, and futility.

_____
UNITED STATES DISTRICT JUDGE