## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JANIS SPENCER MURRAY and
MAC MURRAY,

               Plaintiffs/Counter-Defendants,

        v.                                       No. 09-cv-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

               Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS IV and X OF AMENDED COMPLAINT

THIS MATTER comes before the Court upon Bob and Darian Burt's Motion for Partial

Summary Judgment on Counts IV and X of Plaintiffs' First Amended Complaint, filed

November 12, 2010 (**Doc. 156**).  Having considered the parties' briefs and the applicable law, I

find that Defendants' motion is well-taken in part and will be granted with regard to Count X;

the motion is denied as moot with regard to Count IV based on the parties' stipulation to dismiss

that claim.

### Background

This case arises out of a dispute between the co-owners of the acclaimed quarter horse

*Dash Ta Fame*.  Plaintiff Janis Spencer Murray is a licensed New Mexico veterinarian who, with

her husband Mac Murray owns and operates MJ Farms in Veguita, Socorro County, New

Mexico.  Defendant Bob Burt owns *Dash Ta Fame*. In 1997, Dr. Murray purchased a 10%

ownership interest in the horse.

In 1997, the parties executed an agreement consisting of two pages by which Dr. Murray purchased a 10% ownership in *Dash Ta Fame*.  Bob Burt and Janis Murray also entered into annual breeding contracts for *Dash TaFame* each year beginning in the 1994 breeding season and continuing through the 2009 breeding season. Under each of these breeding contracts, Plaintiffs provided breeding and management services for *Dash Ta Fame*, with Dr. Murray specifically providing the veterinary services.

**Discussion**

In this motion, the Burt Defendants seek summary judgment on Counts IV and X of the First Amended Complaint. Count IV, asserted only against Bob Burt, alleges a breach of a 2009 breeding season agreement.

**I.       Count IV (Breach of 2009 Breeding Season Agreement)**

Since the time the Burts filed the motion for summary judgment, the parties to this action have agreed to a dismissal of Count IV (Breach of the 2009 Breeding Season Agreement). Thus, the only remaining issue is whether the Court should grant partial summary judgment with regard to Count X, in which Plaintiffs allege tortious interference with contractual relations.

**II.      Count X (Intentional Interference with Contractual Relations)**

On my initial review of the pleadings on this motion, I had a concern as to whether Plaintiffs have alleged a viable claim for tortious interference with contractual relations.  I expressed this concern to the parties in ordering them to file supplemental briefs addressing whether Plaintiff's claim for tortious interference should be dismissed, based on case law which the Court referenced in that Order and which suggested that Count X should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  Neither party has filed a supplemental brief to

argue their respective positions.[1]  Thus, the Court will proceed with its own analysis of the claim.

A.      Bases for Tortious Interference Claim

The tort of intentional interference with contractual relations can be accomplished by either of two methods: improper motive solely to harm the plaintiff or improper means.  If proven, either basis standing alone will support liability.  *Zarr v. Washington Tru Solutions*, LLC 146 N.M. 274, 276, 208 P.3d 919, 921 (N.M.App.,2009) (citing *M & M Rental Tools, Inc. v. Milchem, Inc*., 94 N.M. 449, 454, 612 P.2d 241, 246 (Ct.App.1980)).

Plaintiffs state that the basis for their tortious interference claim has two aspects. One aspect is with respect to the purported existing contract between Dr. Murray and Mr. Burt whereby Dr. Murray is entitled to stand *Dash Ta Fame* during the breeding season for the remainder of the horse's life, and with respect to prospective contracts between Plaintiffs' and mare owners for the 2010 breeding season.  On October 31, 2009 (less than two months prior to the filing of this lawsuit), Plaintiffs learned that the stallion would be standing at Smart Ranches for the 2010 breeding season and would not be returning to MJ Farms.  Plaintiffs maintain that in moving the stallion to Smart Ranches during breeding season, the Burt Defendants tortiously interfered with Plaintiffs' bargained-for rights under their existing contracts and also with

---

[1]  It is also of some concern that the parties did not file any briefs: the Order did not merely suggest or invite the parties to submit supplemental briefs; it *required* parties to do so. *See* Doc. 211 at 3 ("Parties *shall* file supplemental briefs. . .") (emphasis added).  Up to now, parties have spared no expense in time and resources in filing motions and responses.  However, when ordered to submit pleadings on a question of law which concerns the pleadings they have filed, they have become strangely silent.  This case has already taken up much of the Court's time and resources, and it appears it will continue to do so through trial.  Counsel is therefore advised to consider carefully before again ignoring an Order from this Court requiring some action on the part of counsel; otherwise sanctions may ensue.

Plaintiffs' prospective contractual relations.

The other basis for the tortious interference claim is allegedly disparaging remarks posted by Darian Burt (Bob Burt's wife) on an internet forum (described by parties as a "chat room"). Doc. 183 at 6.   Ms. Burt posted these messages generally under the pseudonym "nightyniteknight.":

> [W]ell, I have to say that I know Mr. Burt and he put up with a lot of crap from these people at MJ Farms and I really can't believe he didn't move the horse before now. . . . They must have done something really really bad for Mr. Burt to actually move the horse!! I myself am glad . . . as I havn't [sic – haven't] enjoyed my dealings with her to say the least!!!! I spoke to Dr. Swyers yesterday and he is a very nice man with tremendous skills."[2]

Ex. 3, post dated Nov. 4, 2009 at 9:54 p.m.  That same day, Ms. Burt posted a message in which she pretended to live in California, instead of Utah where the Burts actually live:

> "I live in California [where *Dash Ta Fame* would be standing in 2010]. . . I think I would absolutely lovely [sic – love] having a *Dash Ta Fame* race and barrel horse."

Ex. 2, (Darian Burt Dep. at 85:22; Ex. 3 posted Nov. 4 at 10:07 p.m.).

On November 14, this time posting as "huntsman4597," Ms. Burt stated "I personally was treated rudely by Janis." Ex. 4 at. 2.  On November 15, she responded to a post regarding registering *Dash Ta Fame* in the "Future Fortunes" barrel racing program: "so, then, it was Janis [Dr. Murray] that prevented the enrollment of DTTF in the FF . . . boy, that's not good. I guess it is good he's . . . . well nevermind. . . ." Exhibit 4.

There is also evidence that Ms. Burt's anonymous comments about Dr. Murray were noted by others in the forum.  For example, in response to the question of why the Burts would

---

[2] William Swyers is the principal officer of Stallion & Mare Assisted Reproduction, P.C. ("SMART").  *See* Doc. 161 at 1.

move *Dash Ta Fame* after his many years standing in New Mexico, one person stated: "There was a thread last week on this. People were saying how rude the manager was to work with at the old place and people were complaining."  Exhibit 4, p. 1, posted Nov. 13, 2009.

In posting the comment about  the Murrays doing "something really really bad" to cause Bob Burt to move *Dash Ta Fame*, Ms. Burt stated that she was referring to the collection of the frozen semen by the Murrays.   She was aware that the Murrays had breeding contracts that were ready to be signed with mare owners.  Ex. 2 at 77:6-17.

B.    Analysis

The parties appear to assume that a breach of contract may itself give rise to tortious interference.  However, case law suggests that parties to a contract cannot bring an action for tortious interference with an existing contract against each other. *See Deflon v. Sawyers*, 139 N.M. 637, 641, 137 P.3d 577, 581 (N.M.,2006); *Bernalillo County Deputy Sheriffs Ass'n v.County of Bernalillo*, 114 N.M. 695, 699, 845 P.2d 789, 793 (N.M.,1992) (describing requirement for separate duty apart from contractual duty to give rise to tort action) (citation omitted).  Thus, if Count X is premised on the parties' conduct surrounding a purported agreement to stand *Dash Ta Fame* at MJ Farms, it must be dismissed under Rule 12(b)(6).[3]

The first basis for Count X clearly is, for all intents and purposes, premised on an alleged breach of a contract between the parties.  Plaintiffs are alleging that Defendants tortiously interfered with their own contract with Plaintiffs.  Any "duty" connected with such conduct is

---

[3]  The Court has already determined that there are material factual disputes regarding whether such an agreement exists.  This issue involves contract interpretation since there is no express written agreement to that effect.  The Court has also determined that the 1997 agreement is not fully integrated, and thus that limited parol or extrinsic evidence is necessary in order to determine the parties' intent.  *See* Doc. 198 at 5.

one and the same with Defendants' contractual duties, and thus there can be no claim of tortious interference on that basis.  Similarly, allegations of tortious interference with third parties – meaning with prospective customers who owned mares and who wanted to breed these mares with *Dash Ta Fame* for the 2010 breeding season – must also fail because the tortious interference is premised on the same breach of contract.

Plaintiff's other basis for Count X is Darian Burt's allegedly disparaging comments in the chat room.  It is possible to view this basis from two angles.  One angle is that Ms. Burt's chat room comments interfered with the parties' own contract.  This fails for the obvious reason that one party cannot bring a claim for tortious interference against the other party to a contract.  The other angle is less direct, and involves an alleged tortious interference with Plaintiff's prospective contracts with mare owners who had lined up to breed their mares with *Dash Ta Fame* for the 2010 breeding season.  However, this type of claim also fails, but for a different reason.  It is undisputed that the stallion did not stand at MJ Farms for the 2010 breeding season.  Plaintiffs cannot possibly show that Ms. Burt's chat room comments interfered with the opportunity to breed those mares to *Dash Ta Fame* because the stallion was not present at MJ Farms to breed with the mares due to an alleged breach of contract.  In other words, there is no way Plaintiffs can show causation, much less damages, for a tortious interference claim premised on such a theory.  In the end, Count X must be distilled to its essence: a breach of contract claim.  Thus, Plaintiffs cannot state a viable claim for tortious interference from any possible angle, and Count X must be dismissed.

## Conclusion

In sum, the Court finds and concludes that Count IV (breach of 2009 breeding season agreement) is DISMISSED due to stipulation by the parties.  Further, the Court finds and

6

concludes that Count X (tortious interference with contractual relations) must be DISMISSED as well.  This case is at its heart a breach of contract case.  Parties to a contract cannot bring an action for tortious interference with an existing contract against each other.

**THEREFORE,**

**IT IS ORDERED** that Bob and Darian Burt's Motion for Partial Summary Judgment on Counts IV and X of Plaintiffs' First Amended Complaint **(Doc. 156)** is hereby GRANTED IN PART and DENIED IN PART: the motion is GRANTED with regard to Count X (breach of 2009 breeding season agreement) and it is DENIED AS MOOT with regard to Count IV based on the parties' stipulation to dismiss that claim.


_____
UNITED STATES DISTRICT JUDGE