**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JANIS SPENCER MURRAY and
MAC MURRAY,

      Plaintiffs/Counter-Defendants,

     v.                                                      No. 09-cv-1150-WJ/RHS

BOB BURT, DARIAN BURT,
Defendants/Counter-Claimants.
and
SELECT BREEDERS SOUTHWEST,
and SMART RANCHES,

      Defendants.

**MEMORANDUM OPINION AND ORDER VACATING COURT'S MEMORANDUM
OPINION AND ORDER (DOC. 225), and
GRANTING IN PART AND DENYING IN PART BOB AND DARIAN BURT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON COUNTS IV AND X**

THIS MATTER comes before the Court sua sponte, vacating the Court's previous Memorandum and Opinion **(Doc. 225)** granting in part and denying in part Bob and Darian Burt's Motion for Partial Summary Judgment on Counts IV and X. Further, having considered the parties' briefs and the applicable law, I find that Defendants' motion for summary judgment **(Doc. 156)** is denied as moot with regard to Count IV, and is denied as to Count X.

**Background**

In the Court's previous Memorandum Opinion and Order, Count IV was dismissed by agreement of the parties, and Count X was dismissed as a matter of law. (Doc. 225). Also in that Order, the Court noted that counsel had not responded to the Court's Order for supplemental briefing on an issue of law regarding Count X. The Court was later notified that indeed, both parties had filed supplemental pleadings, as ordered.

The Court apologizes for the oversight. There have been literally dozens of motions, responses and replies which have been part of numerous summary judgment motions in this case. However, because counsel designated their pleadings (Docs 219 and 220) as, respectively, a "Response to Motion" and "Memorandum in Support," the Court did not realize that those pleadings were in fact supplemental briefs and thus, overlooked them.

The findings herein do not change the Court's dismissal of Count IV (Breach of the 2009 Breeding Season Agreement) by agreement of the parties. Doc. 222. Thus, the only remaining issue is whether the Court should grant partial summary judgment with regard to Count X, in which Plaintiffs allege tortious interference with contractual relations. The Court has reviewed the supplemental briefs, and finds that Plaintiffs have provided a legal basis for reversing the Court's conclusion that Count X should be dismissed.

## Discussion

The tort of intentional interference with contractual relations can be accomplished by either of two methods: improper motive solely to harm the plaintiff or improper means. If proven, either basis standing alone will support liability. *Zarr v. Wash. Tru Solutions, LLC*, 208 P.3d 919, 921 (N.M. Ct. App. 2009) (citing *M & M Rental Tools, Inc. v. Milchem, Inc.*, 612 P.2d 241, 246 (N.M. Ct. App. 1980)).

A.  Bases for Tortious Interference Claim

Plaintiffs' tortious interference claim has two aspects. *See* Doc. 183 at 7 (Resp. to Undisp. Fact No. 7).

One aspect is with respect to the purported existing agreement between Dr. Murray and Bob Burt that *Dash Ta Fame* would stand at MJ Farms during breeding seasons for the remainder of the horse's life, in that Burt's decision to terminate this agreement tortiously

interfered with Plaintiffs' contracts with mare owners who wanted to breed their mares with *Dash Ta Fame*.[1]  On October 31, 2009 (less than two months prior to the filing of this lawsuit), Plaintiffs learned that the stallion would be standing at Smart Ranches for the 2010 breeding season and would not be returning to MJ Farms.  Plaintiffs maintain that in moving the stallion to Smart Ranches during breeding season, the Burt Defendants tortiously interfered with Plaintiffs' bargained-for rights under their existing contracts and also with Plaintiffs' prospective contractual relations.

The other basis for the tortious interference claim is allegedly disparaging remarks posted by Darian Burt (Bob Burt's wife) on an internet forum (described by parties as a "chat room"). Doc. 183 at 6.  Ms. Burt posted these messages generally under the pseudonym "nightyniteknight":

> [W]ell, I have to say that I know Mr. Burt and he put up with a lot of crap from these people at MJ Farms and I really can't believe he didn't move the horse before now. . . . They must have done something really really bad for Mr. Burt to actually move that horse!! I myself am glad... as I havn't [sic – haven't] enjoyed my dealings with her to say the least!!!! I spoke to Dr. Swyers yesterday and he is a very nice man with tremendous skills.[2]

Ex. 3 at 1, post dated Nov. 4, 2009 at 9:54 p.m.  That same day, Ms. Burt posted a message in which she pretended to live in California, instead of Utah where the Burts actually live:

> I live in California [where *Dash Ta Fame* would be standing in 2010].... I think I would absolutely lovely [sic – love] having a Dash Ta Fame race and barrel

---

[1] The Court has already determined that there are material factual disputes regarding whether such an agreement exists.  This issue involves contract interpretation since there is no express written agreement to that effect.  The Court has also determined that the 1997 agreement is not fully integrated, and thus that limited parol or extrinsic evidence is necessary in order to determine the parties' intent.  *See* Doc. 198 at 5.

[2] William Swyers is the principal officer of Stallion & Mare Assisted Reproduction, P.C. ("SMART").  *See* Doc. 161 at 1.

horse!!

Ex. 3 at 2, post dated Nov. 4, 2009 at 10:07 p.m; *see* Ex. 2, Darian Burt Dep. at 85:22.

On November 14, this time posting as "huntsman4597," Ms. Burt stated "I personally was treated rudely by Janis." Ex. 4 at 2. On November 15, she responded to a post regarding registering *Dash Ta Fame* in the "Future Fortunes" barrel racing program: "so, then, it was Janis [Dr. Murray] that prevented the enrollment of DTF [*Dash Ta Fame*] in the FF . . . boy, that's not good, I guess it is good he's . . . . well, nevermind. . . ." Ex. 4 at 9.

There is also evidence that Ms. Burt's anonymous comments about Dr. Murray were noted by others in the forum. For example, in response to the question of why the Burts would move *Dash Ta Fame* after his many years standing in New Mexico, one person stated: "There was a thread last week on this. People were saying how rude the manager was to work with at the old place and people were complaining." Exhibit 4 at 1, post dated Nov. 13, 2009.

In posting the comment about the Murrays doing "something really really bad" to cause Bob Burt to move *Dash Ta Fame*, Ms. Burt stated that she was referring to the collection of the frozen semen by the Murrays. She was aware that the Murrays had breeding contracts that were ready to be signed with mare owners. Ex. 2 at 77:6-17.

B.   Analysis - Tortious Interference Based on Breach of Agreement

As mentioned above, one aspect of Plaintiffs' tortious interference claim is based on the Burts' alleged termination of an agreement to stand *Dash Ta Fame* during the breeding season for the remainder of the horse's life. This allegedly interfered with existing and prospective contracts between the Murrays and mare owners who were interested in breeding their mares to *Dash Ta Fame*.

   1.   *Whether Plaintiffs Are Precluded from Asserting a Tortious Interference Claim*

Defendants urge the Court to follow its initial ruling in dismissing Count X, pointing to the New Mexico law cited by Court in its previous ruling which holds that parties to a contract cannot bring an action for tortious interference with an existing contract against each other. *See Deflon v. Sawyers*, 137 P.3d 577, 581 (N.M. 2006); *Bernalillo County Deputy Sheriffs Ass'n v.County of Bernalillo*, 845 P.2d 789, 793 (N.M. 1992) (describing requirement for separate duty apart from contractual duty to give rise to tort action).

In their supplemental brief, Plaintiffs cite to *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 885 F.2d 683, 691 (10th Cir. 1989) ,to support their position that they may assert a claim against the Burts for tortious interference against the Burts. This case is on point. Colorado Interstate Gas Co. ("CIG") and Natural Gas Pipeline Co. of America ("Natural") entered into a contract which obliged CIG to deliver and Natural to purchase specified quantities of natural gas. Under that contract, Natural also had the option of paying CIG for gas not purchased. When Natural took this option, CIG was forced to stop buying gas from one of its suppliers. In its tortious interference claim, CIG contended that Natural intentionally stopped taking gas from CIG in order to force CIG to relinquish its contractual right to purchase gas from its supplier. CIG alleged that Natural was motivated by a desire to acquire the rights to purchase the gas fields that supplied CIG with gas. The Tenth Circuit found that even though it was lawful under the contract for Natural to stop purchasing gas from CIG, evidence of a motivation to interfere with CIG's contractual relations with a third party could form the basis of a tortious interference claim. *Id*. at 691 (motive can be a determinative factor in converting otherwise lawful behavior into "improper" conduct for which the defendant will be liable) (following Restatement (Second) of Torts § 767 cmt. d (1977)). The lesson from *Colorado Interstate Gas Co*. is that a claim of breach of contract, if done with improper means or motive, could support a

claim of tortious interference with a contract between the plaintiff and a third party.

The other case cited by Plaintiffs is from the Alaska State Supreme Court. *Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc*., 604 P.2d 1090 (Alaska 1979) (cited in *Colo. Interstate Gas Co*, 885 F.2d at 691). Aurora (the plaintiff in the underlying case) brought a tortious interference claim against Alyeska when Alyeska terminated the contract between them, which by its terms could be terminated at will. Aurora alleged that the termination interfered with its contract with a third party, Radio Corporation of America, which provided communications services for the Alaska pipeline. The court reasoned that "even though a contract is terminable at will, a claim of unjustifiable interference can still be made." *Id.* at 1091. Here again, a tortious interference claim was premised on the existence of a contract between the parties, where the interference affected the plaintiff's relations with third parties.

The cases offered by Plaintiffs offer support for their position that the existence of a purported contract (an agreement to stand *Dash Ta Fame* at MJ Farms) does not preclude Plaintiffs from alleging a claim of tortious interference with contractual relations it had, or expected to have, with mare owners. The New Mexico cases previously cited by the Court, *Deflon* and *Bernalillo County Deputy Sheriffs Association*, are still good law. The apparent tension between these cases and *Colorado Interstate Gas Co.* is easily explained by looking at the New Mexico cases more closely.

In *Deflon v. Sawyers*, 137 P.3d 577, 581 (N.M. 2006), the New Mexico Supreme Court held that a plaintiff could not sue the company she worked for based on a claim of tortious interference with her employment contract. In the instant case, the Murrays are not alleging that the Burts have tortiously interfered with the contract between them by breaching it – such an argument would be precluded under *Deflon*. Instead, the Murrays allege that the Burts are

6

tortiously interfering with the contracts they have *with third parties* – mare owners who want their horses to breed with *Dash Ta Fame*. Under *Colorado Interstate Gas Co.*, such a claim is viable.[3]

In *Bernalillo County Deputy Sheriffs Association*, the New Mexico Supreme Court held that a "separate duty apart from contractual duty" was necessary to bring a tort action. 845 P.2d 789, 793 (N.M. 1992). However, the question before the court was whether plaintiffs could assert a claim of "negligent" breach of contract, where duty is indeed an element. There was no mention of a tortious interference claim, or of an intentional tort, as there is in the instant case. Duty is not an element in the intentional tort which the Murrays are asserting against the Burts, and thus case law involving negligence claims is inapposite.[4]

Based on the above, it should be evident that Defendants are incorrect in arguing that Plaintiffs' tortious interference claim must be dismissed because the Burts have no legal duty to the Murrays outside of the contract (if it exists), or because the Murrays cannot sue another party

---

[3] Further, the plaintiff in *Deflon* was not entirely precluded from pursuing a claim for tortious interference. While she could not sue the company which employed her, the court found that she could allege a claim for intentional interference with a contract claim against the present Defendants in their individual capacities, based on privity law. 137 P.3d at 581.

[4] In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.
Restatement (Second) of Torts § 767 (1977).

7

to a contract.  On closer review of these cases, the Court's previous decision is also incorrect.

Contrary to Defendants' position, and contrary to the Court's previous ruling, New Mexico law does not preclude the Murrays from alleging a tortious interference claim against the Burts.  Thus, the Burt Defendants' Motion for Partial Summary Judgment on Count X of Plaintiffs' First Amended Complaint **(Doc. 156)** is DENIED.

*2.     Whether Summary Judgment Is Appropriate*

Having determined that Plaintiffs are not legally barred from asserting a claim of tortious interference, I must also determine whether Defendant is entitled to summary judgment on Count X.  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Defendants contend that the undisputed material facts and the record evidence disclose that the Murrays have not identified a single contract with any existing customers that the Burts interfered with, nor have the Murrays identified any prospective customers who they anticipated entering into a contract with but were unable to do so because of any conduct by the Burts.  However, Ms. Burt testified in her deposition that she had referred mare owners to MJ Farms for both the 2007 and 2008 seasons as well, and had done so for the 2010 breeding season as well, before Bob Burt decided to stand the horse elsewhere.  She was aware that the Murrays had breeding contracts that were ready to be signed with mare owners.  Doc. 157, Ex. 2, Dep.of Darian Burt at 77:6-17.   Also, Ms. Burt testified that she would begin sending out contracts for these mare owners to approve at the beginning of each October.  Ex. 2 at 77:6–78:19.  Thus, Defendant's own testimony supports Plaintiffs' claim that mare owners were lined up to breed with *Dash Ta Fame* for the 2010 breeding season, and that Plaintiffs expected these contracts to

continue into subsequent breeding seasons.  Thus, I find this to be sufficient evidence to withstand summary judgment on this claim.

Defendants also contend that it is not clear whether Plaintiffs are alleging tortious interference based on existing or prospective contracts.  Doc. 220 at 2 n.2.  However, based on the First Amended Complaint, Plaintiffs have described their tortious interference claim on both theories.  Doc. 108 ¶¶ 123-24.

C.	Analysis – Tortious Interference Based on Ms. Burt's Chat Room Comments

The other basis for Plaintiffs' tortious interference claim involves allegedly disparaging remarks posted by Ms. Burt in a "chat room."  Ms. Burt does not dispute that she posted these messages.  Her posts in the "chat room" could be seen by a reasonable fact finder as encouraging potential customers not to do business with Plaintiffs, and therefore as circumstantial evidence of improper motive.  Thus, summary judgment will be denied as to this aspect of the claim.

The Court previously expressed concern over a lack of causation connecting those comments to tortious interference with Plaintiffs' contracts with other parties.  The Court dismissed the claim based on a finding that Plaintiff could not possibly show that Ms. Burt's chat room comments interfered with the opportunity to breed those mares to *Dash Ta Fame,* because it was undisputed that the stallion did not stand at MJ Farms for the 2010 breeding season.  If the horse was not there at MJ Farms because of an alleged breach of agreement, I did not see how Plaintiffs would be able to show that it was Ms. Burt's comments – as opposed to Bob Burt's decision not to return the horse to MJ Farms – which affected the contracts with the mare owners.

The Court has the same concern now as to Plaintiffs' ability to show causation and damages for this claim.  However, I have reconsidered and believe that the better approach is to

allow the claim to proceed, giving Plaintiffs the opportunity to present evidence connecting Ms. Burt's "chat room" comments to the tortious interference claim.  Of course, Defendants will have the opportunity to make appropriate motions at the close of Plaintiffs' case.

## Conclusion

In sum, the Court finds and concludes that Plaintiffs New Mexico law does not preclude the Murrays from alleging a tortious interference claim against the Burts.  I further find and conclude that there exists material factual disputes as to the tortious interference claim on both aspects alleged by Plaintiffs.

**THEREFORE,**

**IT IS ORDERED** that the Court's Memorandum and Opinion **(Doc. 225)** granting in part and denying in part Bob and Darian Burt's Motion for Partial Summary Judgment on Counts IV and X is hereby VACATED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED**  that Bob and Darian Burt's Motion for Partial Summary Judgment on Counts IV and X of Plaintiffs' First Amended Complaint, filed November 12, 2010 **(Doc. 156)** is hereby DENIED as MOOT with regard to Count IV (based on the parties' agreement to dismiss the claim); and DENIED as to Count X for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE