IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANIS SPENCER MURRAY and
MAC MURRAY,

        Plaintiffs/Counter-Defendants,

v.                                                                  No. 09-CV-1150-WJ/RHS

BOB BURT, DARIAN BURT, and
MISTY MOUNTAIN RANCH, LLC.
        Defendants.

**MEMORANDUM OPINION AND ORDER
RULING ON PENDING DISPOSITIVE MOTIONS
(Docs. 271, 272, 274, 275, 279, 280 and 281)
and
ORDER FOR CLERK OF COURT TO REMOVE MISTY MOUNTAIN RANCH AS
PARTY TO LAWSUIT**

    THIS MATTER comes before the Court upon the following motions:

- Plaintiffs' Motion for Partial Summary Judgment on Nature of Dr. Murray's Ownership Interest in *Dash Ta Fame*, filed October 14, 2011 **(Doc. 271)**;

- Bob and Darian Burt's and Misty Mountain Ranch's Motion for Partial Summary Judgment on Counts I, III, IV, V, VII and VIII of Second Amended Complaint filed October 14, 2011 **(Doc. 272)**;

- Plaintiffs' Motion for Summary Judgment on Misty Mountain Ranch's Counterclaims, filed October 14, 2011 **(Doc. 274)**;

- Bob Burt's and Misty Mountain's Motion for Partial Summary Judgment on Count VI , filed October 14, 2011 **(Doc. 275)**;

- Defendant Misty Mountain Ranch's Motion for Summary Judgment on Plaintiffs' Counts I-IX, filed October 14 2011 **(Doc. 279)**;

- Plaintiffs' Motion for Partial Summary Judgment on Defendants' Claims Based on Plaintiffs' Collection and Freezing of Semen, October 14, 2011 **(Doc. 280)**; and

- Plaintiffs' Motion for Partial Summary Judgment on Misty Mountain Ranch's

Counterclaim for Permanent Injunction (Count VII of Counterclaim), filed October 14, 2011 **(Doc. 281)**.

Having considered the parties' briefs and the applicable law, I find that all of these motions are DENIED.

## Background

This case arises out of a dispute between the co-owners of the acclaimed quarter horse *Dash Ta Fame*.[1]  Plaintiff Janis Spencer Murray is a licensed New Mexico veterinarian who, with her husband Mac Murray owns and operates MJ Farms in Veguita, Socorro County, New Mexico.  Defendant Bob Burt is the majority interest owner of *Dash Ta Fame*.  Defendant Misty Mountain Ranch was recently joined as a Defendant (Doc. 173) based on evidence which suggested that it may have a majority interest in the stallion.

In 1997, Dr. Murray purchased a 10% ownership interest in the horse.  The parties entered into annual breeding contracts for *Dash Ta Fame* each year beginning in the 1994 breeding season and continuing through the 2009 breeding season.  Under each of these breeding contracts, Plaintiffs provided breeding and management services for *Dash Ta Fame*, with Dr. Murray providing the veterinary services.  Plaintiffs allege that Defendants have failed to pay them their share of revenue from *Dash Ta Fame*'s earnings, whether from the sale of frozen semen that has been collected and stored, or otherwise attributable to profits flowing from Plaintiffs' 10% ownership in *Dash Ta Fame*.  One of the many disputes in this case is whether Plaintiffs own a 10% in kind interest in the stallion's frozen stored semen.  There are currently over 2,020 doses of the stallion's semen being held at different locations, namely Select

---

[1] The fact of the stallion's death in 2011 was included in Plaintiffs' statement of facts, without the exact date.  *See* Doc. 271, Statem. of Undisp. Fact No. 19.  However, an internet search revealed that *Dash Ta Fame* died on July 13th of this year.

2

Breeders Southwest ("SBS"), Smart Ranches, as well as MJ Farms.[2] The Burts have asserted breach of contract and contract-related claims against the Murrays based on Plaintiffs' alleged failure to account for all the money due Bob Burt for all semen collected from *Dash Ta Fame*, and for the Murrays' allegedly unauthorized collection and freezing of the horse's sperm without the Burts' knowledge or consent.

*Dash Ta Fame* stood at MJ Farms for the breeding seasons from 1994 to 2009. The stallion spent other parts of the 2008 and 2009 non-breeding seasons at Smart Ranches in Temecula, California where *Dash Ta Fame*'s semen was again collected, frozen, and stored. Plaintiffs allege that in late October 2009, contrary to the parties' agreement and without Plaintiffs' consent, Bob Burt informed them that *Dash Ta Fame* would be standing at Smart Ranches for the 2010 breeding season and would not be returning to MJ Farms for subsequent breeding seasons. Dr. Murray maintains that her purchase of the 10% interest in the stallion meant that the horse would continue to stand at MJ Farms for its life, and that Mr. Burt's failure to do so breached the parties' agreement.

## I.     Procedural Background

Plaintiffs filed the initial complaint on December 7, 2009. The Court has already addressed one round of dispositive motions in this case, before Plaintiffs were allowed to file a Second Amended Complaint (Doc. 241). Defendants were also granted leave to amend their counterclaims (Doc. 251). As a result of these amendments, further extensions were granted for discovery which then led to the filing of other motions (Doc. 262, Scheduling Order). Two

---

[2] Defendant Smart Ranches provided veterinary services to Dash Ta Fame. Smart Ranches was a Defendant in this case, but has been dismissed. *See* Doc. 208. Defendant Select Breeders Southwest, Inc., another Defendant, has also been dismissed as a party. *See* Doc. 18 (voluntary dismissal).

settlement conferences have been held without success.  This is at heart a contract case, but emotions run high on both sides.

The Second Amended Complaint, filed on February 8, 2011 (Doc. 241), seeks the following relief:

- Count I – Breach of Contract for Failure to Renew Breeding Season Agreement (against Bob Burt, Darian Burt and Misty Mountain);

- Count II – Breach of Contract for Failure to Pay Plaintiff her Share of Income Received by Defendants from Whatever Source Derived (against Bob Burt, Darian Burt, and Misty Mountain);

- Count III – Breach of the Covenant of Good Faith and Fair Dealing (against Bob Burt and Misty Mountain);

- Count IV – Promissory Estoppel (against Bob Burt and Misty Mountain);

- Count V – Negligent Misrepresentation (against Bob Burt and Misty Mountain);

- Count VI – Violation of the New Mexico Unfair Trade Practices Act (against Bob Burt and Misty Mountain);

- Count VII –Request for Preliminary and Permanent Injunctive Relief for Breach of Contract in Connection with Frozen Semen (against Bob and Darian Burt, and Misty Mountain);

- Count VIII – Declaratory Judgment (against Bob Burt and Misty Mountain);

- Count IX – Tortious Interference with Contractual Relations (against Bob Burt, Darian Burt, and Misty Mountain); and

- Count X – Constructive Trust (against Bob Burt and Misty Mountain).

## II.     Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law.  *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer,* 101 F.3d 1336, 1338 (10th Cir. 1996).  Once the party moving for

summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## Discussion

Based on my review of the pending motions addressed here, the issues raised by the parties in the various motions require resolution by a fact finder at trial, with few exceptions.

**I.      Plaintiffs' Motion for Partial Summary Judgment on Nature of Dr. Murray's Ownership Interest in *Dash Ta Fame*, filed October 14, 2011 (Doc. 271)[3]**

Plaintiffs seek a ruling by the Court that Dr. Murray's ownership interest is "in-kind" specifically concerning the profits made from the sale of frozen semen collected and frozen at Smart Ranches.

Plaintiffs state that the parties never discussed or agreed on how to allocate the frozen semen collected and frozen at MJ Farms. However, the parties did have an agreement with Select Breeders Southwest ("SBS") where *Dash Ta Fame* was sent for the 2004 non-breeding season to collect and freeze the stallion's semen for later use in artificial insemination of mares. Under the agreement, SBS allocated 90% of the frozen semen to Bob Burt's account and 10% to the MJ Farms account, in accordance with the parties' respective ownership interests.

Beginning in 2007 and continuing until the stallion's death in July 2011, *Dash to Fame*

---

[3] Defendant Misty Mountain Ranch joins in the Response, which was filed by Mr. Burt. *See* Doc. 292.

was sent to Smart Ranches in Temecula, California where his semen was collected and frozen. Plaintiffs contend that Mr. Burt did not disclose Dr. Murray's co-ownership to Smart Ranches until October 2009, and that he failed to pay Dr. Murray any proceeds from the more than 100 doses of frozen semen sold by Smart Ranches on Mr. Burt's behalf. Plaintiffs' position is that since there is no agreement regarding the sharing or allocation of frozen semen other than the agreement in place with SBS, Plaintiffs are entitled to the same 10% ownership interest of the frozen semen stored at Smart Ranches.

Plaintiffs move for an order granting them summary judgment that the 10% ownership interest Dr. Murray purchased from Mr. Burt includes a 10% in-kind ownership of *Dash Ta Fame's* semen collected and frozen since 2004. The exact nature of the parties' agreement, particularly what is included in Dr. Murray's 10% ownership interest, is much disputed. In fact, the contours of the parties' agreement is so unclear that the Court has ruled that certain extrinsic evidence will be allowed at trial in order to determine those very issues. *See* Doc. 198. As a result, this motion is DENIED.

**II.  Bob and Darian Burt's and Misty Mountain Ranch's Motion for Partial Summary Judgment on Counts I, III, IV, V, VII and VIII of Second Amended Complaint filed October 14, 2011 (Doc. 272)[4]**

The parties contest whether Dr. Murray's purchase of a 10% interest in *Dash Ta Fame* also bought her the understanding that the horse would continue to stand at Dr. Murray's farm, MJ Farms, for subsequent breeding seasons. In this motion, Defendants move for dismissal of certain claims in the Second Amended Complaint, based on a statement by Dr. Murray in her deposition that at the time she acquired her interest, she understood and agreed that the horse

---

[4] Defendant Misty Mountain Ranch joins in the Response (Doc. 277).

could be moved to another location at any time, provided that she and Mr. Burt agreed.

In 1997, the parties executed an agreement consisting of two pages by which Dr. Murray purchased a 10% ownership in *Dash Ta Fame*.[5]  The discussion and sale of the 10% interest was facilitated by a mutual friend, Bob Slingerland.  The first part of the agreement was entered into in June, 1997 in Utah.  The June 17, 1997 written agreement between Bob Burt and Dr. Murray was drafted by Dr. Murray (then known as Janis Spencer) in her own handwriting and then signed by Bob Burt.  In October of that same year, Bob Burt and Dr. Murray signed another written agreement.  The October 14, 1997 written agreement between Bob Burt and Janis Murray was drafted and prepared by Mr. Slingerland.

The written contracts between the parties do not expressly address whether Dr. Murray was entitled to stand the horse for the duration of his life at MJ Farms.  Dr. Murray claims that she and Mr. Burt had an oral agreement whereby Dr. Murray could continue to stand *Dash Ta Fame* for life if she purchased a 10% interest in the horse—a claim Mr. Burt denies.  Defendants contend that one of Dr. Murray's statements in her deposition indicates that there was no such agreement:

> I believe when I bought him that there could—I believe, I believed then that there could come a time when we would no longer want to stand *Dash Ta Fame*. Most horses do not become the horses that *Dash Ta Fame* were. . . So ultimately at that time, I thought he could be moved to another location and I'd get 10 percent of the proceeds and I wouldn't have to put up with him and I'd still make a little money. So that was one of the things that I thought could happen.

Doc. 286 Ex. 27-28.  Defendants also point out that the annual breeding contracts Dr. Murray entered into with Mr. Burt from 1994 and 2009, which permitted her to stand the horse for those particular breeding seasons, confirm that she did not have a general contractual right to stand the

---

[5] *See* Doc. 209 at 2-3 (Mem.Op. & Order).

horse for the rest of its life.

Dr. Murray contends that other deposition statements she made are consistent with her right to stand the horse, subject only to her discretion to choose not to exercise that right, pursuant to the parties' agreement.  The Court cannot find as a matter of law that the snippet of deposition testimony offered by Defendants in their motion definitively resolves the issue, when Plaintiffs offer other statements by Dr. Murray which suggest a material dispute regarding the parties' understanding on the matter.  Keeping in mind that I must view the facts favorably to Plaintiffs, I cannot find as a matter of law that the annual breeding contracts prove that there was *no* agreement between the parties that Dr. Murray was entitled to stand *Dash Ta Fame* at her farm after she purchased a 10% interest.  The annual breeding agreements spanned the time both before and after the 1997 written agreements were executed and thus cannot be viewed as defining the parties' rights following the execution of the 1997 agreements.  Second, the annual breeding agreements are not necessarily inconsistent with the argument that they governed in the event that Dr. Murray exercised her discretion during that year not to stand the horse at her farm. Therefore, Defendant's motion is DENIED.

### III.     Plaintiffs' Motion for Summary Judgment on Misty Mountain Ranch's Counterclaims, filed October 14, 2011 (Doc. 274)

Defendant Misty Mountain Ranch ("MMR") has asserted numerous counterclaims against Plaintiffs.[6]  In this motion, Plaintiffs move for summary judgment on those

---

[6] The Counterclaims are as follows: Count I, Breach of Contract (against Janis Spencer Murray); Count II for an Accounting (against Janis Spencer Murray and Mac Murray); Count III, Breach of Covenant of Good Faith and Fair Dealing (against Janis Spencer Murray); Count IV, Unfair, Deceptive and Unconscionable Trade Practices (against Janis Spencer Murray and Mac Murray); Count V, Trover and Conversion (against Janis Spencer Murray and Mac Murray); Count VI, Negligent Misrepresentation (against Janis Spencer Murray and Mac Murray); Count VII, Permanent Injunction (against Janis Spencer Murray and Mac Murray); Count VII, Breach

counterclaims based on MMR's lack of standing to assert affirmative claims against them.

Plaintiffs previously sought to join MMR as a necessary party under Fed.R.Civ.P. 19 by relying on certain documents and testimony which they claimed were inconsistent on the question of the ownership of *Dash Ta Fame*. *See* Doc. 130 (Pltffs' Mot. to Join MMR as Necessary Party). Plaintiffs argued that there was evidence that Bob Burt was not the sole owner of *Dash Ta Fame*, and that MMR held a beneficial interest in the horse. The Court granted the motion to join MMR as a party based on the evidence presented by Plaintiffs at the time. *See* Doc. 173. Plaintiffs now take the diametrically opposite position in the instant motion, asserting as "undisputed" that MMR is not a party to any of the agreements between the parties, and that the parties did not intend to benefit MMR through their contractual dealings. Plaintiffs argue that MMR has no standing in this lawsuit to assert counterclaims against Plaintiffs, yet they insist that MMR is still a necessary party under Rule 19 because Bob Burt formed MMR as a place to deposit proceeds from *Dash Ta Fame* for tax purposes.

Defendants object to this sudden reversal in Plaintiffs' position, and ask that the Court deny Plaintiffs' motion either (1) because there are disputes of material fact pertaining to MMR's interests in the stallion, or in the alternative, (2) on the grounds that MMR is not a

---

of Fiduciary Duty (against Janis Spencer Murray and Mac Murray); Count IX, Embezzlement (against Janis Spencer Murray and Mac Murray); Count X, Equitable Rescission (against Janis Spencer Murray and Mac Murray); Count IX, Constructive Trust (against Janis Spencer Murray and Mac Murray); Count XII, Intentional Interference with Contractual Relations and/or Prospective Business Advantage (against Janis Spencer Murray and Mac Murray); Count XIII, Breach of Bailment (against Janis Spencer Murray and Mac Murray); Count XIV, Replevin and/or Detinue (against Janis Spencer Murray and Mac Murray); Count XV, Misuse and Dilution of Trade Name (against Janis Spencer Murray and Mac Murray); Count XVI, Violation of New Mexico Regulations Applicable to Doctors of Veterinary Medicine (against Janis Spencer Murray); Count XVII, Conspiracy (against Janis Spencer Murray and Mac Murray). *See* Doc. 253 at 12-33 (Answer and Counterclaims).

necessary party under Rule 19, and thus grant summary judgment for MMR on those claims asserted against it by Plaintiffs. Defendants present a judicial estoppel argument which would preclude Plaintiffs from taking one position in one phase of the case, and then a contrary position in another, in order to gain an advantage to the prejudice of the opposing party. *See Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001) (numerous citations omitted).

The Court agrees with Defendants' position. This is not a situation where Plaintiffs seek relief on alternative theories. Plaintiffs expressly argued one position in order to persuade the Court to grant it leave to amend the complaint, and to allow further discovery in a case which has already had several rounds of extensions. *See* Docs. 50, 114, 262 (Scheduling Orders). Then, after being on the receiving end of the counterclaims asserted by the newly joined party, Plaintiffs now claim that discovery disclosures have disabused them of the idea that MMR has any standing in this case. Astonishingly, they expect MMR to remain in the case as a joined party defending against Plaintiffs' claims, but not be able to assert any claims against Plaintiffs.[7]

The law does not allow Plaintiffs to have it both ways. The Court finds that Defendants' alternative suggestion is legally supportable in these circumstances, which is to determine that MMR is no longer a necessary party to the case. This option makes sense, since Plaintiffs now abandon the very arguments they relied on previously to seek joinder.[8] The Court's ruling on

---

[7] It is interesting that Plaintiffs move to dismiss MMR's counterclaims, but take no position regarding the viability of their claims against MMR, which are based on allegations that MMR is a co-owner of the horse.

[8] The arguments that Plaintiffs now abandon were the very reason the Court vacated the initial trial setting. *See* Docs. 87 & 213 (setting case for trial in March 2011), 248 (vacating March 2011 trial). Due to the joinder of Misty Mountain Ranch as a Defendant, upon Plaintiffs' motion, the March 14, 2001 trial setting was pushed back ten months in order to accommodate the amended pleadings and discovery which became necessary. Had this case proceeded to trial in March as scheduled, the parties would now be litigating the case in the Tenth Circuit. Instead,

Plaintiffs' motion to join MMR was premised on evidence available at the time. This evidence suggested that MMR had an ownership interest in *Dash Ta Fame*. In the Order granting Plaintiffs' motion to join MMR, the Court concluded that, based on the potential role of MMR as an owner of *Dash Ta Fame*, MMR "may share responsibility with Bob Burt for paying a potential money judgment. . ." and should thus be joined as a necessary party. Doc. 173 at 3. If further discovery has disabused Plaintiffs of that notion to the extent that there is no longer a disputed issue of fact regarding the horse's ownership, then the basis for the Court's ruling no longer exists. Plaintiffs's position now, based on its statements of undisputed facts in its motion and reply, is that there are no disputed issues of fact to infer that MMR has an ownership interest in the horse or that it benefits from the parties' contracts.

Defendants do not dispute the fact that MMR was formed by Bob Burt "as a place to put his money for tax purposes." *See* Doc. 274, Pltffs' Statem. of Undisp. Fact No. 6. This fact is insufficient as a basis for joinder under Rule 19. Rule 19 was not meant to make it easier for Plaintiffs to collect a judgment, should they prevail in this case. If it were, then a plaintiff would be able to use Rule 19 to join a defendant's bank as a "necessary party" under the rules of civil procedure.

Plaintiffs' motion is DENIED, and the Court's previous Order joining MMR as a necessary party under Rule 19 is VACATED. With the dismissal of MMR as a party to this action, all of Plaintiffs' claims against MMR are DISMISSED with prejudice, and likewise, any counterclaims by MMR against Plaintiffs are DENIED as moot.

---

the parties have expended additional financial resources and time that is now lost to them because of the delay and expenses incurred in having to pay attorney fees and costs for another round of discovery and pretrial matters which have arisen since the March 2011 trial date was vacated.

## IV.	Bob Burt's and Misty Mountain's Motion for Partial Summary Judgment on Count VI , filed October 14, 2011 (Doc. 275)[9]

In Count VI of the Second Amended Complaint, Plaintiffs allege violations of the New Mexico Unfair Practices Act based on two allegations: claims under the UPA are: (1) that Bob Burt and/or Misty Mountain Ranch, LLC, (collectively "Burt") failed to disclose to William Swyers ("Swyers") at Smart Ranches that Dr. Murray was a co-owner of *Dash Ta Fame*; and (2) that Burt failed to list Dr. Murray as a co-owner of *Dash Ta Fame* with the American Quarter Horse Association ("AQHA").

The Court has visited this issue once before, granting summary judgment to Defendants on two other claims brought by Plaintiffs under the Unfair Practices Act, and denying summary judgment on the identical two issues on which Defendants again seek summary judgment. *See* Doc. 214.  Defendants seek summary judgment again based on new evidence which they claim proves several undisputed facts.  Defendants state that William Swyers, the owner of Smart Ranches, learned as early as October 2009 that Bob Burt was not the sole owner of the horse. Defendants note that the 2011 breeding season agreement with Smart Ranches was entered into *after* Mr. Swyers learned of Dr. Murray's 10% interest in the horse, and that the 2011 agreement did not require Dr. Murray's approval or signature.  Defendants also state that when Dr. Murray negotiated her 10% interest in the horse in 1997, it was verbally agreed that *Dash Ta Fame* would stay in Burt's name as far as the American Quarterhorse Association ("AQHA") was concerned.

In their response, Plaintiffs submit evidence to dispute Defendants' statements.  The 2011 breeding agreement between Smart Ranches and Bob Burt has no relevance to any of the

---

[9] MMR joins in the Response to this motion.  *See* Doc. 278.

earlier breeding agreements involving Smart Ranches. The fact that Mr. Swyers decided to stand *Dash Ta Fame* with him even after he knew about Dr. Murray's interest does not necessarily mean he would have chosen to do so for prior agreements when he did not know about Dr. Murray's ownership interest. The Court is not inclined to make this finding as a matter of law.

Also, Plaintiffs offer testimony by Dr. Murray which contradicts earlier testimony presented by Defendants to show that Dr. Murray understood that she would not be listed as a registered owner of the horse with AQHA. Summary judgment is not the arena in which to challenge credibility based on inconsistent statements. *See Bisbee v. Bey*, 39 F.3d 1096, 1101 (10th Cir. 1994) (questions of credibility should be decided by the jury). Accordingly, Defendants' motion is DENIED.

**V.     Defendant Misty Mountain Ranch's Motion for Summary Judgment on Plaintiffs' Counts I-IX, filed October 14 2011 (Doc. 279)**

MMR moves for summary judgment on Counts I-IX of Plaintiffs' Second Amended Complaint. Plaintiffs' claims against MMR are premised on the allegation that MMR has an interest in *Dash Ta Fame*. However, Plaintiffs have recently switched their position, now arguing that MMR was not an intended beneficiary of the parties' contractual dealings, and does not have an interest in the stallion. *See* Doc. 274 and discussion, *above*. However, in light of the Court's finding and conclusion th at MMR should be dismissed as a party because it is no longer a necessary party under Rule 19, this motion is DENIED as MOOT.

**VI.    Plaintiffs' Motion for Partial Summary Judgment on Defendants' Claims Based on Plaintiffs' Collection and Freezing of Semen, October 14, 2011 (Doc. 280)[10]**

---

[10] MMR has joined in the Response. Doc. 291.

In this motion, Plaintiffs' move for partial summary judgment on Defendants' counterclaims based on Plaintiffs' collection and freezing of *Dash Ta Fame's* semen.

In 2001, the AQHA authorized the use of frozen semen in breeding stallions to mares. During the 2004 and 2005 non-breeding seasons, Dr. Murray and Bob Burt agreed to send *Dash Ta Fame* to Select Breeders Southwest ("SBS") in Aubrey, Texas where his semen was collected, frozen, and preserved for later use in artificial insemination of mares. In accordance with the parties' respective ownership interests, SBS allocated 90% of the semen collected and frozen to Bob Burt's account and 10% to the MJ Farms account. During the 2006 breeding season, there was an EVA outbreak at MJ Farms and *Dash Ta Fame* became infected.[11] As a result of the 2006 EVA outbreak, the New Mexico Livestock Board imposed a quarantine on MJ Farms and *Dash Ta Fame* could not leave MJ Farms for the 2006 non-breeding season. For parts of 2007, 2008 and 2009, Plaintiffs collected, preserved, froze and stored semen for parts of 2007-2009 while the stallion was located at MJ Farms, contending that they did so because of the quarantine place on MJ Farms by the Livestock Board.[12] Plaintiffs does not dispute that the semen collected during this period was EVA-positive.

Defendants dispute that Bob Burt had prior knowledge that Plaintiffs were going to

---

[11] The Court takes judicial notice of pleadings in this case which contain information about the EVA virus. *See, e.g. Doc.* 191. EVA (sometimes referred to as "equine arteritis virus" or "equine viral arteritis"), is a contagious viral equine disease which causes mares to experience a higher than normal rate of abortion. EVA is spread from horse to horse through respiratory secretions and by breeding. Stallions can spread the disease through their semen, although a stallion that ceases to "shed" EVA in his semen is no longer capable of transmitting the virus in that manner. EVA-positive semen can still be used to breed mares as long as appropriate measures are followed.
The EVA outbreak at MJ Farms and any resulting damage to Defendants is the subject of a separate lawsuit pending in state court.

[12] These facts are presented as undisputed facts in the instant motion.

collect and freeze the horse's semen at their farm in 2006 and 2007, or that he authorized those actions. Mr. Burt states that he began to suspect that the Murrays were freezing semen at their farm when an individual named Whit Byers called him in 2006 and told Mr. Burt that Dr. Murray had shipped some EVA semen over to him and wanted it frozen. No written contract addresses Plaintiffs' collection and freezing of *Dash Ta Fame's* semen at MJ Farms; thus, one of the questions in this case is whether the Murrays' collection and freezing of semen at their farm was a breach of any of the agreements between the parties.

Plaintiff's motion seeks dismissal of Defendants' claims in connection with the collection and freezing of *Dash Ta Fame's* semen on the grounds that Defendants suffered no damages as a result of the alleged conduct. The dispute over whether Plaintiffs' collection and freezing of the horse's semen constitutes a breach of contract precludes summary judgment on these counterclaims. Further, Defendants have alleged a UPA claim based on Plaintiffs' allegedly unauthorized collection and freezing of the semen.[13] The UPA does not require proof of actual monetary or property loss. *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 446, 166 P.3d 1091, 1100 (N.M.App., 2007) (even if plaintiff failed to prove that he and putative class members suffered economic losses, they may nevertheless seek the statutory $100 minimum); *Pedroza v. Lomas Auto Mall, Inc.*, 663 F.Supp.2d 1123, 1129 (D.N.M.,2009) (where plaintiff did not prove any loss of money or property, recovery was limited to the statutory $100).

---

[13] Count IV of the Bob Burt's Amended Counterclaim states that:
Plaintiffs made false or misleading statements to Defendant in connection with the breeding of *Dash Ta Fame* in New Mexico concerning the semen collected from *Dash Ta Fame* and concerning the money due to Bob Burt pursuant to the annual breeding contracts. Plaintiffs knew or should have known that these statements were false and that they may, tend to or will deceive or mislead Defendant

Doc. 255, ¶ 37.

Accordingly, Plaintiff's motion is DENIED.

VII. **Plaintiffs' Motion for Partial Summary Judgment on Misty Mountain Ranch's Counterclaim for Permanent Injunction (Count VII of Counterclaim), filed October 14, 2011 (Doc. 281)**

Plaintiffs move for summary judgment on one of the counterclaims asserted by Defendant Misty Mountain Ranch ("MMR"). In Count VII of the Counterclaim, MMR requests a Court order enjoining the Murrays from marketing, selling and transporting *Dash Ta Fame*'s EVA-positive frozen semen which was collected at MJ Farms while the horse was quarantined there during the EVA outbreak. *See* Doc. 253 ¶ 83. MMR seeks the injunction to avoid the risk that it could become the target of a lawsuit by the Burts if EVA-positive frozen semen were to infect other horses or cause another EVA outbreak, thus causing the horse to lose its value as a stud horse.

The Court denies this motion for two reasons. First, there is little risk that *Dash Ta Fame* will lose his value as a stud horse in the future, since the stallion has died. Second, the Court has ruled that Plaintiffs' current position on issues related to MMR indicates that there is no dispute of fact suggesting that MMR owns any part of *Dash Ta Fame*, and thus there is no longer a legal or factual basis to keep MMR joined as a necessary party in this case. (*See* discussion above relating to findings on Doc. 274).

As a result, the Court DENIES this motion as moot, based on the Court's other findings herein.

## Conclusion

In sum, the Court finds and concludes that:

- Plaintiffs' Motion for Partial Summary Judgment on Nature of Dr. Murray's Ownership Interest in *Dash Ta Fame* (**Doc. 271**) is hereby DENIED for reasons describe in this Memorandum Opinion and Order;

- Bob and Darian Burt's and Misty Mountain Ranch's Motion for Partial Summary Judgment on Counts I, III, IV, V, VII and VIII of Second Amended Complaint **(Doc. 272)** is hereby DENIED for reasons describe in this Memorandum Opinion and Order;

- Plaintiffs' Motion for Summary Judgment on Misty Mountain Ranch's Counterclaims **(Doc. 274)** is hereby DENIED for reasons describe in this Memorandum Opinion and Order. The Court's previous Order joining Misty Mountain Ranch **(Doc. 173)** as a necessary party under Rule 19 is hereby VACATED. Further, with the dismissal of Misty Mountain Ranch as a party to this action, all of Plaintiffs' claims against Misty Mountain Ranch are DISMISSED with prejudice, and any counterclaims by MMR against Plaintiffs are DENIED as moot;

- Bob Burt's and Misty Mountain's Motion for Partial Summary Judgment on Count VI **(Doc. 275)** is hereby DENIED for reasons describe in this Memorandum Opinion and Order;

- Defendant Misty Mountain Ranch's Motion for Summary Judgment on Plaintiffs' Counts I-IX **(Doc. 279)** is hereby DENIED AS MOOT based on the Court's finding and conclusion that Misty Mountain Ranch should be dismissed as a party to this action because it is no longer a necessary party under Rule 19;

- Plaintiffs' Motion for Partial Summary Judgment on Defendants' Claims Based on Plaintiffs' Collection and Freezing of Semen **(Doc. 280)** is hereby DENIED for reasons describe in this Memorandum Opinion and Order; and

- Plaintiffs' Motion for Partial Summary Judgment on Misty Mountain Ranch's Counterclaim for Permanent Injunction (Count VII of Counterclaim) **(Doc. 281)** is hereby DENIED for reasons describe in this Memorandum Opinion and Order, based on the Court's other rulings herein.

**THEREFORE,**

**IT IS ORDERED** that the above motions are hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to remove Misty Mountain Ranch as a party in this case.

_____
UNITED STATES DISTRICT JUDGE