# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JANIS SPENCER MURRAY and**
**MAC MURRAY,**

      **Plaintiffs,**

**v.**                                                                    **No.   09-cv-1150 WJ/RHS**

**BOB BURT, et al.,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION REGARDING MISTY MOUNTAIN RANCH, LLC'S MOTION FOR ATTORNEY FEES UNDER THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

THIS MATTER is before the Court on Defendant Misty Mountain Ranch, LLC's Motion for Costs and Attorney Fees Pursuant to Rule 54 and the New Mexico Unfair Practices Act [("UPA")] [Doc. 370] ("Motion"), filed on January 13, 2012.   Plaintiffs responded in opposition on January 30, 2012.   Plaintiffs' Response to Misty Mountain Ranch, LLC's Motion for Rule 11 Sanctions (Doc. 368), for Costs and Fees Pursuant to Rule 54 and the New Mexico Unfair Practices Act (Doc. 370), and for Leave to Submit Time Sheets for *in Camera* Review (Doc. 369) [Doc. 385] ("Response").   On February 13, 2012, Defendant Misty Mountain Ranch, LLC ("MMR") replied.   Defendant [MMR]'s Reply in Support of its Motion for Costs and Attorney Fees Pursuant to Rule 54 and the New Mexico Unfair Practices Act [Doc. 387] ("Reply").   The Motion was referred to the undersigned by the presiding judge, the Honorable William P. Johnson, United States District Judge, on February 24, 2012, to recommend an ultimate disposition.   Order of Reference of Motion in Civil Case [Doc. 397].   The Court issued its recommendation to grant the motion as to costs under Fed. R. Civ. P. 54, on April 27, 2012.   Magistrate Judge's Proposed

Findings and Recommended Disposition of Defendant [MMR]'s Motion for Costs [Doc. 424] ("PF&RD").   At that time, the Court reserved recommendation on the UPA request until after a related show-cause hearing on May 30, 2012.   *Id.* at 4; *see* Clerk's Minutes [Doc. 431] (for show-cause hearing on motion for sanctions against Plaintiffs under 28 U.S.C. § 1927).   On May 11, 2012, Plaintiffs objected to the PF&RD on several grounds.   Plaintiffs' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition of Defendant [MMR]'s Motion for Costs; and Request that the Court Defer Ruling on Objections [Doc. 427] ("Objections").   Judge Johnson overruled the objections, adopted the PF&RD, and awarded MMR $5,616.74 in costs under Rule 54, on May 15, 2012.   Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 429].

The Court, have reviewed the briefing, the record, and the relevant law, having heard oral argument, and being otherwise fully advised in the premises, FINDS that Plaintiffs' UPA claim was not groundless at the time it was brought.   Therefore, the Court recommends that MMR's Motion for attorney fees under the UPA should be DENIED.

## BACKGROUND

This case arose out of a dispute between the co-owners of a quarter horse, *Dash Ta Fame*. Plaintiffs alleged that Defendant Bob Burt, the majority interest owner, failed to pay them their share of revenue from *Dash Ta Fame's* earnings, whether from the sale of frozen semen that has been collected and stored, or otherwise attributable to profits flowing from Plaintiffs' part ownership in *Dash Ta Fame*.

Plaintiffs filed their initial complaint on December 7, 2009.   Complaint and Demand for a Jury Trial [Doc. 1].   MMR was not named as a party.   *Id.*   On October 13, 2010, Plaintiffs moved to join MMR as a party defendant, arguing that MMR was an indispensible party because it held a beneficial interest in the horse.   *See* Motion To Join [MMR] as a Party Defendant [Doc. 130].   The Burt Defendants opposed the motion.   The Burts' Response in Opposition to Motion to Join [MMR] as a Party [Doc. 147].   The Court granted the motion, finding that there was, at the very least, circumstantial evidence that MMR held an ownership interest in the horse. *See* Memorandum Opinion and Order Granting Plaintiffs' Motion to Join [MMR] as a Party Defendant [Doc.173] at 4–6.   Shortly thereafter, the Court vacated the first trial setting to allow MMR time to retain counsel.   *See* Order Resulting from February 27, 2011 Hearing [Doc. 240] at 3.

Plaintiffs filed their Second Amended Complaint [Doc. 241] naming MMR as a defendant on February 8, 2011.   Most of Plaintiffs' claims against MMR were premised on MMR's alleged ownership interest in *Dash Ta Fame*, including Plaintiffs' claim for violation of the UPA.[1]   *Id.* at 16–17.   However, at least two claims, for tortious interference with contractual relationship and for constructive trust, were not based on MMR's having an interest in the horse.   *See id.* at 20–21. On March 7, 2011, MMR filed its Answer and Counterclaim [Doc. 253].   Interestingly, in its Answer, MMR did not deny outright any ownership of the horse; it claimed that it could not tell whether or not it held an ownership in the horse.   *Id.* at 2, ¶ 8; at 3, ¶ 17; at 4, ¶¶ 25, 28.   Yet in its

---

[1] The UPA claim was rooted in Plaintiffs' allegation that Defendant Bob Burt—acting either individually or as the managing member of MMR or both—failed to inform certain third parties of Plaintiff Janis Murray's ownership interest in *Dash Ta Fame*.   Second Amended Complaint [Doc. 241] at 16.

counterclaim, MMR alleged "upon information and belief" that it *was* an owner of the horse.   *Id.*

at 9, ¶ 8.   Plaintiffs subsequently redeposed the Burt Defendants, this time as Rule 30(b)(6)

representatives of MMR.   Contrary to testimony they had given at their first depositions, they

testified unequivocally that MMR held no ownership interest in *Dash Ta Fame*.   *See* Response

[Doc. 385] at 7.[2]

On October 14, 2011, Plaintiffs moved for summary judgment on MMR's counterclaims.

Plaintiffs' Motion for Summary Judgment on [MMR]'s Counterclaims [Doc. 274].   In their

motion, Plaintiffs argued that MMR lacked standing to assert affirmative claims against them

because it was "undisputed" that (1) MMR was not an owner of *Dash Ta Fame*, and (2) MMR was

not a party to any of the agreements between the Plaintiffs and the other defendants.   *See id.*

at 5, 6.   In his December 15, 2011 order, Judge Johnson noted that Plaintiffs' position in their

motion for summary judgment was "the diametrically opposite position" from that which they had

taken in their motion to join MMR as a defendant.   Memorandum Opinion and Order Ruling on

Pending Dispositive Motions [Doc. 311] at 9.   Judge Johnson denied the motion for summary

judgment, dismissed with prejudice all of Plaintiffs' claims against MMR, and vacated the

previous order joining MMR as a defendant.   *Id.* at 16–17.

Presently before the Court is the portion of MMR's Motion seeking attorney fees under the

UPA.   Motion [Doc. 370] at 3–5.   MMR contends that an award of fees is appropriate for several

reasons.   First, MMR contends that the UPA claim contained in the Second Amended Complaint

was groundless when filed because MMR did not exist until several years after the alleged

---

[2] Although the deposition transcript containing Defendant Bob Burt's unequivocal testimony itself does not appear to be a matter of record, it was repeatedly referenced at oral argument, and neither counsel challenged its existence.

wrongdoing.  *Id.* at 4; Reply [Doc. 387] at 4.  MMR also contends that the UPA claim was groundless because, at the time it was filed, Plaintiffs "knew for a fact" that MMR did not own the horse and, therefore, could not be liable based on a claim hinging on ownership.  Motion [Doc. 370] at 4.  MMR goes on to argue that the groundlessness of the UPA claim can be inferred from Plaintiffs' reversal of position on whether MMR had an interest in *Dash Ta Fame*; Plaintiffs sought summary judgment on MMR's counterclaims while, at the same time, maintaining that their own claims against MMR should stand.  Reply [Doc. 387] at 5.[3]  Plaintiffs, on the other hand, oppose the imposition of attorney fees and assert that their UPA claim was made in good faith and was supported by the law and facts known to them at the time.  Response [Doc. 385] at 1–2, 10.

### FINDINGS OF FACT

1. At all times relevant to this motion, Defendant Bob Burt was the managing member of Defendant MMR.

2. On July 15, 2009, Bob Burt signed a Frozen Semen Service Contract with Smart Ranches, Inc. that identified MMR as a co-owner of *Dash Ta Fame*.  [Doc. 427-2] at 1.[4]

---

[3] MMR's Reply argues in pertinent part:

> Plaintiffs readiness to relinquish their earlier position and failure to argue that the existence of conflicting evidence pertaining to Misty Mountain's involvement with *Dash Ta Fame* created genuine issues of material fact regarding Misty Mountain's role with respect to *Dash Ta Fame*, creates a strong inference that Plaintiffs knew Misty Mountain had no interests and, thus, no obligations to identify Janis Murray as a partial owner of *Dash Ta Fame*.  This fact also creates that inference that Plaintiffs pursued a UPA claim for the purpose of causing undue delay and expense to the Burts and Misty Mountain.

Reply [Doc. 387] at 5–6.

[4] The contract is actually with "Stallion & Mare Assisted Reproduction, SMART, PC," which is the same entity as "Smart Ranches, Inc."  Answer and Affirmative Defenses of Defendant Smart Ranches [Doc. 23] at 12, ¶ 6 (explaining that Smart Ranches, Inc.'s proper name is Stallion & Mare Assisted Reproduction, SMART, PC).

3.  In its Answer to the original Complaint, on February 5, 2010, Smart Ranches, Inc., raised the affirmative defense of failure to join an indispensable party.   Answer and Affirmative Defenses of Defendant Smart Ranches [Doc. 23] at 12–13, ¶ 5.

4.  In response to Plaintiffs' interrogatories, Smart Ranches affirmatively identified MMR as the indispensible party to which its Answer referred.   Smart Ranches stated further that it considered MMR to be an indispensable party because of the 2009 breeding agreement for *Dash Ta Fame*, which identified Defendant Bob Burt and MMR as co-owners. [Doc. 427-1] at 6, 9–10.

5.  The Burt Defendants answered Plaintiffs' First Set of Interrogatories on May 3, 2010. Their answers also referenced the 2009 breeding agreement.   [Doc. 427-1] at 2–3 (answers); *see* [Doc. 427-2] at 2 (agreement).

6.  On July 18, 2010, Defendant Darian Burt testified in a deposition that she did not know whether MMR owned any stallions.   [Doc. 427-3] at 2–4.

7.  On July 19, 2010, Defendant Bob Burt testified in a deposition that MMR owned "[m]aybe one horse," *Wind Fame*.   [Doc. 427-4] at 2.   When asked what kind of entity MMR was, Mr. Burt testified that "it receives all the money that the horse business takes in."   *Id.* at 3. Mr. Burt further testified that he did not know whether he had sold *Dash Ta Fame's* income stream to MMR, saying, "You'd have to ask the accountant that, sir."   *Id.* at 6.

8.  The Burt Defendants served their answers to Janis Spencer Murray's Second Set of Interrogatories on July 27, 2010.   *See* Plaintiffs' Objections to [PF&RD on MMR's

Motion for Costs] [Doc. 427] at 6.   The answers list MMR's assets as of December 31, 2009, and include neither *Dash Ta Fame* nor *Wind Fame*.   [Doc. 427-5] at 1–3.

9.  On September 20, 2010, Plaintiffs deposed Leon Hill, Defendant Bob Burt's accountant. Mr. Hill testified that there *was* an agreement between Bob Burt and MMR regarding Burt's income from *Dash Ta Fame* but that the agreement was not in writing. [Doc. 427-6] at 1–2.

10. Plaintiffs filed their Second Amended Complaint [Doc. 241] on February 8, 2011, asserting claims against MMR.   Most of their claims hinge on MMR's having an interest in *Dash Ta Fame*, but at least two—Tortious Interference and Constructive Trust—do not.

11. On September 14, 2011, Defendant Darian Burt was redeposed, this time as MMR's Rule 30(b)(6) representative.   She testified that MMR had no rights at all with respect to *Dash Ta Fame*.   She further testified that MMR owns nothing of *Dash Ta Fame* and had no right to money that it generates. *See* [Doc. 427-7] at 1–4; *see also* [Doc. 274-3] at 1–9.

12. Defendant Bob Burt was also deposed as MMR's Rule 30(b)(6) representative on September 14, 2011.   [Doc. 427-8] at 1–2; *see generally* [Doc. 387-1] at 1–5.   Contrary to his earlier deposition testimony, he testified unequivocally that MMR had no ownership interest in *Dash Ta Fame*.   *See* Response [Doc. 385] at 7; oral argument, *supra* note 2.

13. On October 14, 2011, Plaintiffs moved for summary judgment on MMR's counterclaims. Plaintiffs argued that MMR lacked standing to bring the counterclaims because MMR had no ownership interest in *Dash Ta Fame*.   Nevertheless, Plaintiffs still maintained that

MMR should be kept in the case as an indispensable party.   MSJ [Doc. 274] at 2–3; *see also* [Doc. 274-2] at 1–4.

### <u>The Court Recommends Denying Attorney Fees Under the UPA</u>

The parties agree on the standard for awarding attorney fees under the UPA.   The UPA mandates the award of attorney fees when a court finds that a party has brought a "groundless" UPA claim.   NMSA (1978), § 57-12-10(C) ("The court shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice . . . if it finds that the party complaining of such trade practice brought an action that was groundless.")   However, simply prevailing on a UPA claim does not establish that the claim was groundless.   *Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 93, 898 P.2d 709, 728 (1995).    Rather, in order to show that a claim was groundless, there must be "no arguable basis in law or fact to support the cause of action and the claim [must not be] supported by a good-faith argument for the extension, modification, or reversal of existing law."   *Id.*, 120 N.M. 74, 93, 898 P.2d 709, 728 (1995) (quoting *G.E.W. Mech. Contractors, Inc. v. Johnston Co.*, 115 N.M. 727, 733, 858 P.2d 103, 109 (N.M. Ct. App. 1993)). The movant bears the burden of showing that the claim was groundless at the time that it was brought.   *See Jones v. Beavers*, 116 N.M. 634, 640, 866 P.2d 362, 368 (N.M. Ct. App. 1993) (movant's burden); *G.E.W.*, 115 N.M. at 733, 858 P.2d at 109 (at time claim was brought).   The purpose of authorizing attorney fees under the UPA "is to reimburse a party for the expense of defending a frivolous action and to dissuade parties from filing actions where there is no arguable basis in law or fact to support the cause of action."   *G.E.W.*, 115 N.M. at 733, 858 P.2d at 109.

The Court recommends denying MMR's Motion for several reasons.  First, MMR asserts that the filing of the UPA claim was groundless at its inception because the claim alleged wrongdoing by MMR years before MMR existed.  If MMR were right, it would have a point. But it is mistaken.  Plaintiffs' UPA claim asserted that "notwithstanding the requirements of the American Quarter Horse Association, Defendant Bob Burt failed and refused to list Plaintiff Janis Spencer Murray as a co-owner of *Dash Ta Fame* at any point in time from June of 1997, when she first acquired her ownership interest, until the present."   Second Amended Complaint [Doc. 241] at 16.  Plaintiffs conclude that Defendants Bob Burt and MMR, therefore, violated the UPA. MMR reads this claim to mean that Plaintiffs asserted that MMR had been violating the UPA since 1997.  The Court disagrees.  The claim does not specify when Bob Burt's alleged failures became attributable to MMR.  Because the claim can be fairly read to mean that MMR was liable for Bob Burt's conduct at some time between 1997 and 2011, when the claim was filed, the Court cannot say that it was groundless.  Moreover, the earliest specific wrongdoing by MMR is alleged to have occurred in 2004.  *See* Second Amended Complaint [Doc. 241] at 6, ¶ 33–35.  By MMR's own admission, it existed in 2002.  MMR's argument, therefore, fails.

Second, the Court recommends denying the Motion because the claim at issue was filed with leave of court.  Judge Johnson granted Plaintiffs leave to join MMR, Memorandum Opinion and Order Granting Plaintiffs' Motion to Join [MMR] as a Party Defendant [Doc. 173] at 3–6, and granted them leave to file their Second Amended Complaint asserting a UPA claim against MMR, Order Resulting from February 7, 2011 Hearing [Doc. 240] at 1–2.  Plaintiffs filed the UPA claim with leave of court, which in itself provides an arguable basis in law or fact for such filing.  *Cf.*

9

*Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119–20 (7th Cir. 1994) (In the context of sanctions under 28 U.S.C. § 1927, where the district court approves of certain conduct, even implicitly, "it is even questionable whether [the] conduct constitutes ordinary negligence." Thus, court-authorized conduct likely cannot be said to have no arguable basis in law or fact.)

While filing the Second Amended Complaint may not have been the most efficient route to clarification of *Dash Ta Fame's* ownership, the Court cannot say that it had no arguable basis in law or fact.  Before Plaintiffs brought MMR into the lawsuit, they were faced with equivocal, even contradictory, evidence regarding MMR's interest in *Dash Ta Fame*.  It was essential for Plaintiffs to determine who had interests in the horse because the monetary and injunctive relief Plaintiffs sought could not have been afforded without all owners in the lawsuit.  Plaintiffs had to determine whether MMR owned an interest in *Dash Ta Fame* or its income stream.  MMR argues that Plaintiffs "knew for a fact" that MMR had no ownership interest in the horse before the Second Amended Complaint, including the UPA claim, was filed.  The Court does not agree.  The evidence that Plaintiffs had by February 8, 2011, was anything but clear.

For example, Plaintiffs had a copy of a breeding contract dated October 31, 2009, signed by Defendant Bob Burt, indicating that MMR was co-owner of *Dash Ta Fame*.  Defendant Smart Ranches, Inc., took the position that MMR was an owner of *Dash Ta Fame* and, in fact, insisted that MMR was a necessary party to the litigation.  When initially deposed, the Burt Defendants had both testified that they did not know whether MMR owned an interest in the horse.  Defendant Bob Burt also testified that he did not know whether he had sold *Dash Ta Fame's* income stream to MMR.  In September of 2010, Mr. Hill testified in his deposition that there was

an agreement between Mr. Burt and MMR regarding the income from *Dash Ta Fame*, but the agreement was not in writing.   In view of this equivocal testimony and circumstantial evidence that MMR had an interest in *Dash Ta Fame*, Plaintiffs moved to join MMR.   After reviewing the briefs and all the pertinent evidence, Judge Johnson granted the motion.

It was not until seven months after the Second Amended Complaint had been filed that Plaintiffs obtained unequivocal, sworn testimony that MMR had no interest in *Dash Ta Fame*.   In September of 2011, the Burt Defendants were redeposed, this time as Rule 30(b)(6) representatives of MMR.   Contrary to their earlier equivocal testimony, they both testified unequivocally that MMR had no interest in the horse.   This deposition testimony was the first time that Plaintiffs had unequivocal, sworn testimony directly addressing MMR's purported ownership interest in *Dash Ta Fame*.   Although there may have been an easier or less costly way of establishing whether MMR held an ownership interest in the horse, the Court cannot say that bringing MMR into the lawsuit and asserting a UPA claim against it had no arguable legal or factual basis.[5]

Finally, MMR argues that an award of fees is justified because Plaintiffs moved for summary judgment on MMR's counterclaims—based on MMR's lack of interest in *Dash Ta Fame*—while simultaneously arguing that MMR was still a necessary party and should be kept in

---

[5]   For clarity of the record, the Court is not persuaded by MMR's arguments regarding whether it had an active management role in the horse for the past decade because that assertion was not made with respect to the UPA claim in the Second Amended Complaint.   Therefore, the issue is irrelevant to the Motion at bar.   In response to the instant Motion, Plaintiffs argued that their UPA claim had a factual basis because, among other things, MMR had played an "active role in management of the horse for the last decade."   Response [Doc. 385] at 10.   MMR points out that Plaintiffs cited to no evidence to support the statement, and further MMR points to contradictory evidence of record. Reply [Doc. 387] at 4–5.   This issue is a red herring because, as explained herein, the evidence that is present on the record demonstrates that Plaintiffs had an arguable basis fact or law to assert the UPA claim at the time.

the lawsuit.   MMR's argument is without merit.   The standard for awarding attorney fees under the UPA is whether the claim was groundless *when filed*, not whether it became groundless at some later time.   Plaintiffs' change in position was based on new evidence not available to the Plaintiffs when the claim was filed.

        In summary, the Court finds that MMR has failed to meet its burden to show that Plaintiffs' UPA claim was groundless when it was filed.

        **WHEREFORE,**

        **IT IS RESPECTFULLY RECOMMENDED** that Defendant Misty Mountain Ranch, LLC's Motion for Costs and Attorney Fees Pursuant to Rule 54 and the New Mexico Unfair Practices Act [Doc. 370] be **DENIED** as to the claim for attorney fees under the UPA.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**